**Norman I. BECKER, Plaintiff,**

v.

**The CITY UNIVERSITY OF NEW YORK, Defendant.**

No. 97 Civ. 4838(MGC).

United States District Court, S.D. New York.

May 1, 2000.

Bruce Robbins, Eastchester, NY, for Plaintiff.

Eliot Spitzer, Attorney General of the State of New York, New York, NY by June Steinberg, Assistant Attorney General, for Defendant.

## OPINION

CEDARBAUM, District Judge.

Plaintiff Norman I. Becker sues the City University of New York ("CUNY") for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Earlier this year, the United States Supreme Court held that the Eleventh Amendment of the Constitution bars a suit in federal court under the ADEA by a private individual against a state. *Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). I directed Becker and CUNY to address the court's jurisdiction over this action in light of the Supreme Court's decision in *Kimel.* Specifically, I ordered the parties to submit authorities and evidence on the question of whether CUNY's central administration, the unit of CUNY for which plaintiff works, is an arm of the State of New York for purposes of sovereign immunity. Because the answer to that question is "yes," this action is barred by the Eleventh Amendment, and dismissed accordingly.

## BACKGROUND

Becker is an Assistant Chief Architect in the Department of Design, Construction and Management of CUNY (the "Department"). The Department is responsible for managing CUNY's capital construction and rehabilitation program and for providing technical assistance to the constituent colleges. Becker has been employed by CUNY as an architect since 1973. He is currently 57 years old.

Becker asserts that he has suffered age discrimination by his employer since he rejected an early retirement offer in 1995. Specifically, he alleges that he has received poor performance evaluations and a recommendation of demotion and discharge because of his refusal to accept early retirement. He also alleges that his staff has been eliminated, that he is no longer assigned to projects that would help him qualify for promotion, and that he was not notified of an opening for a position as Chief Architect for which he was qualified.

All of these events, Becker alleges, occurred in retaliation for his refusal to retire. Becker also asserts that he has been harassed by his supervisors on account of his age.

CUNY moved for summary judgment on all of Becker's claims. Becker moved to amend his complaint to include new allegations of discrimination. Before oral argument of these motions, the Supreme Court issued its decision in *Kimel,* raising a question as to whether this court has jurisdiction over the action.

## DISCUSSION

█ It is well-settled that the Eleventh Amendment bars a suit for damages brought in federal court by a private individual against a state unless Congress has explicitly abrogated the state's sovereign immunity or the state has waived it. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). In *Kimel,* the Supreme Court held that Congress exceeded its authority when it provided that a private individual could assert a claim for damages against a state under the ADEA. *Kimel,* —— U.S. at ——, 120 S.Ct. at 650. The State of New York has not consented to suit in this case. Consequently, if CUNY's central office is an "arm of the state" for purposes of sovereign immunity, this action must be dismissed. *Rosa R. v. Connelly,* 889 F.2d 435, 437 (2d Cir.1989).

█ In determining whether an entity is an arm of the state for Eleventh Amendment purposes, it is necessary to consider "the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity" and "the degree of supervision exercised by the state over the defendant en ity." *Pikulin v. City Univ. of New York,* 176 F.3d 598, 600 (2d Cir.1999). The first of these two factors, "the vulnerability of the State's purse," is "the most salient

facto in Eleventh Amendment determinations." *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 48, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38 (2d Cir.1977).

Until last year, every federal judge who addressed the question of whether CUNY is an arm of the state answered in the affirmative. *See, e.g., Burrell v. City Univ. of New York*, 995 F.Supp. 398, 410–11 (S.D.N.Y.1998); *Minetos v. City Univ. of New York*, 875 F.Supp. 1046, 1053 (S.D.N.Y.1995); *Moche v. City Univ. of New York*, 781 F.Supp. 160, 165 (E.D.N.Y. 1992). These decisions relied primarily on the obligation of the State of New York, under N.Y. Educ. Law. § 6205(1), to indemnify CUNY's trustees, officers, and staff against liability.

However, in *Pikulin*, the Court of Appeals criticized this reasoning as inadequate. In *Pikulin*, the trial court relied on the above cases in dismissing on sovereign immunity grounds plaintiffs' claims asserted against CUNY under 42 U.S.C. §§ 1981 and 1983. The Court of Appeals vacated the judgment dismissing these claims, noting that N.Y. Educ. Law § 6205(1) "requires the state to indemnify only such individuals affiliated with CUNY, and does not address the state's financial responsibility, if any, to satisfy judgments entered against CUNY itself." *Pikulin*, 176 F.3d at 600. The court remanded the case for further proceedings, suggesting that on remand "defendant should develop a record sufficient to allow the district court to consider fully CUNY's relationship to the state." *Id.* at 601.

■ It is uncontested that the department in which plaintiff is employed is part of CUNY's central administration, and that the central administration is considered a "senior college" under the Education Law. N.Y. Educ. Law. § 6202(5); Woo Decl. ¶ 2. This distinction is important because the suit in *Pikulin* involved a CUNY community college,[1] which enjoys a

relationship with the state different from that of a senior college. *Compare* N.Y. Educ. Law §§ 6224(1) and 6229 *with* N.Y. Educ. Law §§ 6224(4) and 6230. Thus, the relevant inquiry is not whether the state pays every judgment entered against any CUNY college, but rather whether the state pays the judgment in every suit against a CUNY senior college; specifically, the central administration office.

After heeding the *Pikulin* court's admonitions and performing a more searching inquiry of the provisions of the New York Education Law pertaining to the relationship between CUNY and the state, I conclude that a CUNY senior college is an arm of the state for Eleventh Amendment purposes. Both of the relevant factors—whether the state pays the judgment and the degree of control exercised by the state—support this conclusion.

The Education Law expressly provides that the state will pay a judgment entered against a CUNY senior college. Section 6224(6) provides:

Notwithstanding any inconsistent provisions of law … the comptroller of the state of New York is authorized to examine, audit, certify for payment and pay from funding sources available for payment of claims by the state any settlement, order or judgment in any federal or state court, other than the court of claims, or any administrative tribunal which pertains to a *senior college* of the city university of New York.

N.Y. Educ. Law § 6224(6) (emphasis added). *See also id.* § 6225 (providing for state reimbursement of judgments paid by City of New York in actions pending before state assumed responsibility for funding CUNY); *id.* § 6224(5) (providing for state payment of judgments entered against CUNY in state court of claims); *Perry v. City of New York*, 126 A.D.2d 714, 511 N.Y.S.2d 310 (2d Dep't 1987) (ordering dismissal of City of New York as improper defendant where "the proper defendant is

---

1. *See Pikulin*, No. 95 Civ. 1147, Amended Complaint ¶¶ 6, 31; *Hester–Bey v. New York*  *City Technical College*, No. CV–98–5129, slip op. at 6 (E.D.N.Y. Mar. 22, 2000)

CUNY, with the ultimate governmental body responsible for paying any judgment being the State").

Affidavits of state officials confirm that the state pays judgments entered against CUNY senior colleges. Helen Woo, the Acting University Controller for CUNY, is responsible for processing judgments or settlements for payment. She affirms that "[i]n prior cases where plaintiffs were employed at the CUNY central office, judgments or settlements in cases brought against CUNY as an institution have been paid from state funds." (Woo Decl. ¶ 3.) She explains that she processes such payments by sending a copy of the settlement or judgment with a state payment voucher to the state comptroller's office for approval. Upon such approval, the comptroller's office issues a check from state funds. She notes that in 1999, the state issued checks in settlement of two actions brought against CUNY by two employees of CUNY's central administration.

Finally, the state is ultimately responsible for funding the budget for CUNY's central administration. Since 1979, the State of New York has assumed responsibility for funding CUNY's senior colleges. (Foster Decl. ¶ 3.) The budget bill ultimately ratified by the state legislature fully appropriates all operating funds for CUNY, and in particular its central administration office. (Brabham Decl. ¶ 2.) Although the City of New York reimburses the state for some operating expenses, it does not reimburse the state for any payments made by the state for judgments or settlements. (Woo Supp. Decl. ¶ 3.) The legislature expresses its intent to assume financial responsibility for CUNY in its finding that "in order to meet the state's responsibility to provide post-secondary education in New York city beyond the associate degree level, as it does elsewhere in the state, there should be *full state funding of senior college operating and debt service.*" N.Y. Educ. Law § 6201(1) (emphasis added).

There is no evidence that any entity other than the state will pay a judgment entered against a CUNY senior college. To the contrary, all of the evidence shows that if Becker were to prevail on his claim, the State of New York would pay the resulting judgment. Accordingly, this factor weighs heavily in favor of finding CUNY's central administration to be an arm of the State of New York.

The second factor also shows that CUNY's central administration is an arm of the state. In addition to paying judgments entered against CUNY senior colleges, the state retains ultimate control over how CUNY is governed and operated. First, the state has the power to appoint a majority of the members of CUNY's controlling body. CUNY is governed and administered by a board of trustees. N.Y. Educ. Law § 6204(1). Ten of the seventeen members of CUNY's board of trustees are appointed by the governor with the advice and consent of the state senate. *Id.* § 6204(2)(a). The chairperson and vice chairperson of the board are appointed by the governor. *Id.* § 6204(2)(d).

Furthermore, the creation of the budget for CUNY's senior colleges is subject to state supervision. The chancellor of the university is required to submit each year to the governor a proposed budget for the senior colleges' operating and capital expenses. *Id.* § 6230(2). The governor submits his budget recommendations to the state legislature as part of the local assistance and capital construction portions of the executive budget. *Id.* § 6230(3). The state comptroller is required to audit annually the senior college annual financial report and make a report to the governor and other officials. *Id.* § 6230(4).

Other provisions of the Education Law show that although CUNY has a degree of independence, it is ultimately accountable to, and dependent upon, the state. The real property used by CUNY senior colleges is owned by the State of New York. *Id.* § 6219(1)(a). CUNY is authorized to acquire property for use by senior colleges using the state's eminent domain power. *Id.* §§ 307, 6213. More generally, the leg-

islature concludes that "[t]he governance of the university must reflect increased state responsibility but should preserve the city's participation in the governance of the university it created and developed at city expense." *Id.* § 6201(1).

In sum, the State of New York is responsible for paying judgments entered against CUNY senior colleges. The state also has ultimate authority over how CUNY senior colleges are operated and governed. Accordingly, Becker's suit against CUNY's central administration is equivalent to a suit against the State of New York, and is thus barred by the Eleventh Amendment. *See Hester–Bey,* slip op. at 8.

### CONCLUSION

For the foregoing reasons, this action is dismissed. CUNY's motion for summary judgment on the merits and Becker's motion to amend his complaint are denied as moot.

SO ORDERED.