**Keith HAMILTON, Plaintiff,**

v.

**CITY COLLEGE OF THE CITY UNIVERSITY OF NEW YORK, et al., Defendants.**

**No. 97 Civ. 5490(CBM).**

United States District Court, S.D. New York.

Nov. 27, 2001.

Sherilyn R. Dandridge, New York City, for plaintiff.

Judith T. Kramer and Kimberly Ann Dasse, Office of Eliot Spitzer, N.Y. State Atty. General, New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### I. INTRODUCTION

Plaintiff Keith Hamilton brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.;* the Rehabilitation Act, 29 U.S.C. §§ 701–798; the Due Process and Equal Protection Clauses of the Fourteenth Amendment (through 42 U.S.C. § 1983); and New York state contract law.

Before the court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated in this opinion, summary judgment is granted to defendants as to all the federal claims. As for the state law cause of action, the court declines to exercise supplemental jurisdiction over that claim, and it is therefore dismissed without prejudice.

### II. PARTIES AND CLAIMS

Plaintiff Keith Hamilton suffers from dyslexia, a neurobiological learning disability that can substantially interfere with an otherwise normally intelligent person's ability to acquire speech, reading, or other cognitive skills. The parties do not dispute that dyslexia is a disability under the ADA and the Rehabilitation Act. While Mr. Hamilton was enrolled in the engineering program at defendant City College of the City University of New York, one of his math instructors, defendant Phi–Sheng Ding, allegedly failed to reasonably accommodate Mr. Hamilton's disability. Besides the College and Professor Ding, the other named defendants are Professor J. Barshay (chair of the Department of Mathematics) and Professor Alberto Guzman (assistant chair of the Department). Plaintiff has apparently joined Professors Barshay and Guzman in this action under a theory of respondeat superior.

The complaint does not list specific causes of action. It merely states: "Defendant's [sic] actions violate the ADA, 42 U.S.C. §§ 12101, *et seq.;* the Rehabilitation Act, 29 U.S.C. §§ 701–798 (1985); the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the Constitution of the United States; and 42 U.S.C. § 1983." Compl. ¶ 23. Paragraph 24 of the Complaint adds an allegation that City College "breached its contractual agreement to provide reasonable accommodations for students," thereby "violat[ing] ... state contract law." Mr. Hamilton seeks $3 million in general damages and pain and suffering as well as $10 million in punitive damages for willful and intentional discrimination.

### III. FACTUAL BACKGROUND

The following facts are taken from plaintiff's version of events. Plaintiff Keith Hamilton was a student at City College in the Spring 1997 semester, registered in the School of Engineering. Before registering in the School of Engineering, Mr. Hamilton had contacted Mr. Joseph Ciccone, the Coordinator of the Office of Disabled Student Services, advising Mr. Ciccone of his disability. In August 1993 Mr. Ciccone issued a letter to Mr. Hamilton's instructors which stated that, in order to

accommodate Mr. Hamilton's disability, "certain accommodations or modifications of standard classroom practices may be required." Ding Aff. Ex. A. For Mr. Hamilton, the accommodations were:

1. Extra time on exams (double time is recommended).

2. Use of a calculator when needed.

3. Use of a dictionary and/or a computer (word processer [sic]) for written work.

4. Flexibility about assignment deadlines.

*Id.* The letter went on to state that "Mr. Hamilton understands that he/she is expected to complete all assignments and meet the regular standards for passing the course." *Id.* The letter also refers Mr. Hamilton's professors to a manual prepared by the Office, "Reasonable Accommodations: A Faculty Guide to Teaching College Students with Disabilities." *See* Ding Aff Ex. B. That manual states, in pertinent part, "[t]he objective of [special accommodations or modifications] is always to accommodate the student's learning differences, not to water down scholastic requirements." *Id.* at 7.

In the Spring 1997 semester, Mr. Hamilton enrolled in Math 202 which was taught by Professor Ding. At the beginning of the semester, Mr. Hamilton presented his accommodation letter to Prof. Ding. Prior to the first test given in the class, Mr. Hamilton requested additional time on the tests and the final examination. Prof. Ding granted Mr. Hamilton's request and permitted him double the time allotted to complete all tests and the final examination. Prior to the first test, Prof. Ding informed the class that calculators would not be permitted, but Mr. Hamilton raised an objection based on his disability. After considering this request, Prof. Ding determined that the use of a calculator would not interfere with the test's objectives.

He therefore granted the plaintiff's request.

For the second test, Prof. Ding again announced that no calculators would be permitted. Mr. Hamilton once again requested an accommodation. Prof. Ding granted that request after determining that the use of a calculator would not interfere with the test's objectives.

For the in-class portion of the third test, Mr. Hamilton did not request the use of a calculator. For the take home portion of the third test, all of the students were allowed to use a calculator.

For the final exam, Prof. Ding did not let Mr. Hamilton use a calculator. In his deposition, Prof. Ding gave the following reason: "[B]ecause of the specific contents of the examination, although [Mr. Hamilton] made the request to use the calculator, I still disallowed and the reason for that is, as I said, due to the nature of the subject matter and the specific contents of the examination and to have the exam serve its purpose, I disallowed the use of the calculator." Ding Dep. at 18.

Later, in the Fall 1997 semester, after Mr. Hamilton commenced the instant litigation, the Office of Disabled Student Services issued a new accommodation letter to all instructors on behalf of Mr. Hamilton which stated:

[Mr. Hamilton] requires the following accommodations:

1. Extra time on exams, double time is recommended.

2. Use of a calculator when appropriate.

3. Flexibility with assignment deadlines.

4. Use of a dictionary or computer spell check for exams.

Pl.'s Br. Ex. 2. The new accommodation letter also stated that "demonstrably es-

sential academic requirements of a course of study need not be altered nor is the College mandated to alter or effect substantial modifications of reasonable academic standards." *Id.*

## IV. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only if "there is no genuine issue as to material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* "In assessing the record to determine if such issues exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129 (2d Cir.2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). That is to say, the deposition testimony, affidavits, and documentary evidence must be viewed in the light most favorable to the plaintiff. *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 165 (2d Cir.2001); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). However, "in moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## V. DISCUSSION

It is not entirely clear from plaintiff's Brief and Complaint precisely what particular types of claims he is asserting. It seems that his ADA and Rehabilitation Act causes of action are premised on a claim of direct discrimination and on a "hostile learning environment" claim. As for the Due Process and Equal Protection claims, plaintiff has not clearly articulated the bases for the requested relief. Finally, the state law contract claim appears to be based on the accommodation letter and brochures produced by City College and the College's Office of Disabled Student Services.

### A. Eleventh Amendment Immunity

■ Under the Eleventh Amendment, federal courts generally lack jurisdiction over suits brought by a private party against a state, unless the state has consented to suit or Congress has expressly (and validly) abrogated the state's immunity. *See Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). This court agrees with the conclusion of other courts in this district that the senior colleges of the CUNY system are arms of the state of New York for Eleventh Amendment purposes. *See, e.g., Loren v. Levy,* No. 00 Civ. 7687, 2001 WL 921173 (S.D.N.Y. Aug.14, 2001); *Becker v. City Univ. of N.Y.,* 94 F.Supp.2d 487 (S.D.N.Y.2000); *Bunch v. City Univ. of N.Y. Queens Coll.,* No. 98 Civ. 1172, 2000 WL 1457078 (S.D.N.Y. Sept. 28, 2000).

■ Earlier this year, the Second Circuit decided *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* No. 00–9223, 2001 WL 1159970 (2d Cir. Sept.26, 2001). In that case, a disabled student who was dismissed from a state university brought suit alleging violations of the ADA and the Rehabilitation Act. Interpreting the Supreme Court's recent Eleventh Amendment and ADA jurisprudence—*see Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d

252 (1996)—the court in *Garcia* held that "a private suit for money damages under Title II of the ADA may only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Garcia*, 2001 WL 1159970 at *9. The court went on to hold that Eleventh Amendment immunity also barred any Rehabilitation Act claims. *Id.* at *11.

While plaintiff alleges in his Complaint that defendants knowingly discriminated against him, he does not allege (nor has he proffered any evidence) that defendants acted out of discriminatory animus or ill will. Defendant City College is therefore entitled to summary judgment on the ADA and Rehabilitation Act claims.[1]

Plaintiff nevertheless tries to argue in his Brief that since the Office of Disabled Student Services changed the language in his accommodation letter after he filed this lawsuit (from "calculator as needed" to "calculator when appropriate"), this somehow demonstrates the requisite animus to overcome Eleventh Amendment immunity. Even assuming that the second letter is not inadmissible as a subsequent remedial measure, *see* Fed.R.Evid. 407, it could at most demonstrate that City College knowingly discriminated against plaintiff. It would altogether fail to demonstrate the ill will or animus required by *Garcia*.

■ As for the other individually named defendants, "insofar as [plaintiff] is suing the individual defendants in their official capacities, he is seeking damages from New York, and the Eleventh Amendment therefore shields them to the same extent as [the College]." *Garcia*, 2001 WL 1159970 at *4. "Insofar as [plaintiff] is suing the individual defendants in their individual capacities, neither Title II of the ADA or § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Id.* Accordingly, defendants Ding, Barshay, and Guzman are entitled to summary judgment on the ADA and Rehabilitation Act claims.

**B. The Due Process and Equal Protection Claims**

■ Plaintiff alleges that his rights under the "Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States" have been violated. Compl. ¶ 23. In his Complaint, plaintiff fails to state precisely the nature of the violation. In his Brief, he appears to argue that defendants failed to follow their own ADA accommodation policies when they denied him the use of a calculator, and that this somehow violated his right to Equal Protection and Due Process.

Courts have traditionally shown great deference to a teacher's professional judgment. *See, e.g., Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) ("When judges are asked to review the substance of a genuinely academic decision ... they should show great respect for the faculty's professional judgment."). In the context of challenges to academic dismissals, the Second Circuit has noted that "educational institutions have the right to receive summary judgment [on Due Process and Equal Protection claims] unless there is evidence

---

1. The plaintiff also alleges a "hostile learning environment" claim. *See Guckenberger v. Boston Univ.*, 957 F.Supp. 306, 313–14 (D.Mass.1997). Such a claim, however, has yet to be recognized by the Second Circuit. In any event, even assuming the availability and demonstrability of such a claim, Prof. Ding's single denial of an accommodation (especially in light of his previous accommodations) is wholly insufficient to demonstrate the irrational discriminatory animus or ill will required by *Garcia*.

from which a jury could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." *Clements v. County of Nassau,* 835 F.2d 1000, 1004 (2d Cir.1987). Plaintiff appears to concede that a similar standard should apply with regard to Prof. Ding's action. *See* Pl.'s Br. at 17. The record clearly shows that Prof. Ding was operating within the bounds of the College's ADA policy as outlined in manual prepared by the Office of Disabled Student Services. *See* Ding Aff. Ex. B at 7 ("The objective of [special accommodations or modifications] is always to accommodate the student's learning differences, not to water down scholastic requirements."). Prof. Ding's uncontroverted testimony was that use of a calculator would defeat the objectives and purposes of the final examination. *See* Ding. Dep. at 17–18. Morever, Prof. Ding had made numerous accommodations previously to plaintiff when such accommodations did not conflict with course objectives. Since plaintiff has failed to adduce any evidence from which a jury could possibly conclude that Prof. Ping's decision was motivated by animus or ill will, summary judgment must be also granted to all defendants as to the Due Process and Equal Protection claims.

### C. State Law Contract Claim

Since none of Mr. Hamilton's federal claims survive, the court declines to entertain any state law contract claim. If all of the plaintiff's "federal claims are dismissed before trial ... the state claims should be dismissed as well." *Grace v. Rosenstock,* 228 F.3d 40, 55 (2d Cir.2000) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The court therefore declines to exercise jurisdiction over plaintiff's state law claim, and that claim is therefore dismissed without prejudice.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be granted in all respects, except that plaintiff's pendent state law claim should be dismissed without prejudice. An appropriate Order has been filed.