Alice CLISSURAS and Patricia Clissuras, Plaintiffs–Appellants,

v.

CITY UNIVERSITY OF NEW YORK, Teachers' Retirement System of the City of New York, Professional Staff Congress–CUNY, PSC–CUNY Welfare Fund, Defendants–Appellees,

All Causally Responsible Individuals of Aforesaid Four Agencies, All Potentially Responsible Agencies, All Causally Responsible Individuals of Said Potentially Responsible Agencies, Defendants.

Docket Nos. 03–7531, 03–7532.

United States Court of Appeals, Second Circuit.

Argued: Jan. 27, 2004.

Decided: Feb. 3, 2004.

Alice Clissuras, pro se, Brooklyn, N.Y. (Patricia Clissuras, pro se, Brooklyn, NY, on submission).

Oren Zeve, Deputy Solicitor General, for Eliot Spitzer, Attorney General for the State of New York (Michael S. Belohlavek and Jean Lin, Assistant Solicitors General, on the brief), for Defendant–Appellee City University of New York.

Barry I. Levy, Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP, New York, NY, for Defendant–Appellee Professional Staff Congress–CUNY.

Neil D. Lipton, Spivak, Lipton, Watanabe, Spivak & Moss, LLP, New York, NY, for Defendant–Appellee PSC–CUNY Welfare Fund.

Norman Corenthal, Corporation Counsel of the City of New York, New York, N.Y. (Michael A. Cardozo and Kristin M. Helmers, on the brief), for Defendant–Appellee Teachers' Retirement System of the City of New York.

Before: KEARSE, CALABRESI, and KATZMANN, Circuit Judges.

PER CURIAM.

In October 2002, plaintiffs-appellants Alice Clissuras and Patricia Clissuras filed separate *pro se* actions, in United States District Court for the Southern District of New York, against the City University of New York ("CUNY"), the Teachers' Retirement System of the City of New York ("TRS"), Professional Staff Congress–CUNY ("the Union"), PSC–CUNY Welfare Fund ("the Fund"), and various unnamed and potentially responsible defendants. Their virtually identical complaints alleged numerous constitutional violations, ostensibly pursuant to 42 U.S.C. §§ 1983 and 1985, and a variety of state law claims. The gravamen of the plaintiffs' action is that, following their respective retirements from the faculty of CUNY's New York City College of Technology, they were de-

nied certain pension and health benefits because of improper calculations and misclassifications by the defendants.

The district court (Scheindlin, *J.*) dismissed the claims against defendant CUNY at the outset of the litigation on the ground that it is "an arm of the state" and consequently entitled to Eleventh Amendment immunity.[1] U.S. Const. amend. XI. We agree with the district court that New York City College of Technology, plaintiffs' former employer and the relevant entity for the purposes of immunity analysis, is a "senior college" of the City University of New York.[2] *See* N.Y. Educ. Law § 6202(5) (McKinney Supp.2004) ("The term 'senior college' shall mean an institution of higher education in the city of New York ... including ... New York city college of technology (formerly known as 'New York city technical college') ...."); *Hester–Bey v. New York City Technical Coll.*, No. CV–98–5129 (CPS), 2000 WL 488484, *3, 2000 U.S. Dist. LEXIS 5323, at *8 (E.D.N.Y Mar. 22, 2000). ("Technical College is by statute a senior college of CUNY."). We

are thus left with a question heretofore unanswered in this circuit: Is a CUNY senior college an "arm of the state" and therefore immune from suit? For the reasons that follow, we find that it is.

■ We review *de novo* a district court's dismissal on grounds of sovereign immunity. *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 94 (2d Cir.2002). It is well settled that the "ultimate guarantee" of the Eleventh Amendment is that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).[3] And the Eleventh Amendment extends immunity "not only to a state, but also to entities considered 'arms of the state.'" *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir.2001). CUNY argues that it qualifies as an "arm of the state."

■ CUNY made the same argument before this Court four years ago, in a case

---

1. The court below also dismissed the actions against the remaining named defendants pursuant to Fed.R.Civ.P. 12(b)(6), and enjoined the plaintiffs from instituting any future federal litigation against CUNY and these defendants without seeking leave of the court. We affirm this dismissal—pertinent to TRS, the Union, and the Fund—and the injunction in a separate order.

2. Under New York Law, CUNY is a separate corporate body. See N.Y. Educ. Law § 6203 (McKinney 2001). CUNY is composed of "each senior college and each community college." *Id.* § 6202(2) (McKinney Supp.2004). New York City Technical College does not appear to be a legally cognizable entity apart from CUNY. *See id.* §§ 6202(2) & 6202(5). Consequently, CUNY is the properly named defendant in this action. What is more, that we view New York City College of Technology, rather than CUNY's central administration, as the relevant institution is of no moment: The central administration is also a "senior college." *Id.* § 6202(5).

3. The two exceptions to this rule—congressional abrogation and state waiver—are not applicable here. Plaintiffs argue that CUNY "waived immunity by not answering and not making a motion." But CUNY did make a "suggestion" to the court, in the form of a letter, that jurisdiction over CUNY did not lie because of sovereign immunity. *See* Fed. R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). And although, as a general matter, we disapprove of district courts signing dismissal orders without giving plaintiffs an express opportunity to respond, in the instant case, we see no reason to remand this question, which we can readily decide on the submissions and the law before us. *See McGinty v. New York*, 251 F.3d 84, 90 (2d Cir.2001) ("Since [the] issues are predominantly of a legal nature, we believe we are adequately informed to decide them.").

involving a CUNY community college. *See Pikulin v. CUNY*, 176 F.3d 598, 600 (2d Cir.1999) (per curiam).[4] In *Pikulin*, after reviewing the district court's conclusion that sovereign immunity attached, we sent the case back for reconsideration due to inadequate findings.[5] Without deciding the ultimate question of CUNY's immunity, *Pikulin* set forth two factors that should guide the determination of whether an institution is an arm of the state: (1) "the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity," and (2) "the degree of supervision exercised by the state over the defendant entity." *Pikulin*, 176 F.3d at 600. The first of these is the "most salient factor in Eleventh Amendment determinations." *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

■ We find that CUNY senior colleges meet the two criteria outlined in *Pikulin*. First, the state is responsible for paying money judgments entered against CUNY senior colleges. *See* N.Y. Educ. Law § 6224(6) (McKinney 2001) ("[T]he comptroller of the state of New York is authorized to ... pay from funding sources available for payment of claims by the state any settlement, order or judgment in any federal or state court, other than the court of claims, or any administrative tribunal which pertains *to a senior college of the city university of New York*.") (emphasis added);[6] *see also id.* § 6224(5) (providing for state's payment of judgments entered against CUNY in state court of claims); *Perry v. City of New York*, 126 A.D.2d 714, 511 N.Y.S.2d 310 (2d Dept.1987) (holding that the state is responsible for paying money judgments against a senior CUNY college). The state also reimburses CUNY senior colleges for their net operating expenses. *See* N.Y. Educ. Law § 6221(A)(4) (McKinney Supp.2004).

Second, "ultimate control over how CUNY is governed and operated" rests with the state. *Becker v. City Univ. Of New York*, 94 F.Supp.2d 487, 490 (S.D.N.Y.2000). Among other things, the governor, with the advice and consent of the state senate, appoints ten of the seventeen members of CUNY's board of trustees, including the chair and vice chair. *See* N.Y. Educ. Law. § 6204(2)(a) & (d) (McKinney 2001). And the chancellor is required by law to submit an annual proposed budget, already approved by the board of trustees, to the governor, who in turn presents his budget recommendations for the senior colleges to the state legislature. *Id.* § 6230(2) & (3).[7]

4. *Pikulin* "involved a contract between plaintiffs and the board of trustees of Kings borough Community College, a CUNY community college, to install heating, ventilation, and air conditioning equipment." *Hester–Bey*, 2000 WL 488484 at *2, 2000 U.S. Dist. LEXIS 5323, at *5.

5. Specifically, we criticized the lower court's reliance on "the state's statutory obligation to indemnify trustees, officers, and staff of CUNY against liability," because, we reasoned, "this provision of state law requires the state to indemnify only such *individuals* affiliated with CUNY, and does not address the state's financial responsibility, if any, to satisfy judgments entered against CUNY it-

self." *Pikulin*, 176 F.3d at 600 (citing N.Y. Educ. Law § 6205(1)).

6. By contrast, claims against CUNY *community* colleges, such as the one at issue in *Pikulin*, are governed by Sections 50–e & 50–i of New York's General Municipal Law. *See* N.Y. Educ. Law § 6224(1) (McKinney 2001). While these sections suggest that the City of New York is responsible for paying any judgments rendered against CUNY's community colleges, we need not determine that issue here.

7. Moreover, the real property of the CUNY senior colleges is owned by the state, *see id.* § 6219(1)(a), and CUNY may acquire proper-

CUNY senior colleges certainly do have a degree of independence, but they are "ultimately accountable to, and dependent upon, the state." *Becker,* 94 F.Supp.2d at 490.[8] Therefore, we agree with all of the district courts in our circuit that have considered the issue that a CUNY senior college, here New York City College of Technology, is an "arm of the state." Plaintiffs' suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment.

We have considered all of plaintiffs' challenges to the dismissal of CUNY for lack of jurisdiction on the ground of sovereign immunity and find them to be meritless. Accordingly, we AFFIRM the judgment of the district court as it pertains to CUNY.

ty for use by senior colleges using the state's eminent domain power, *see id.* § 6213(2).

8. Section 6201(2) states, in relevant part, that "[t]he legislature intends that the city university of New York should be maintained as an independent system of higher education." *Id.* § 6201(2). And Section 6201(1) preserves a role for the city: "The governance of the university must reflect increased state responsibility but should preserve the city's participation in the governance of the university it created and developed at city expense." But in light of all the other factors supporting state authority and control over CUNY and its senior colleges, a finding of sovereign immunity remains appropriate.