Frances WEIXEL and Rose Weixel, Plaintiffs–Appellants,

v.

The BOARD OF EDUCATION OF THE CITY OF NEW YORK; Community School District Two in the City of New York; Junior High School 104 in Manhattan; Office of Pupil Personnel Services, Community School District Two in Manhattan; Office of Student Health Services, Community District Two in Manhattan; Office of Student Support Services, The Board of Education of the City of New York; The Board of Education Office of Equal Opportunity; The Local Office of Equal Opportunity, Community School District Two in Manhattan; Ms. Marjorie Struk, Principal, JHS 104 in Manhattan; Ms. Joan Stockhamer, Guidance Counselor, JHS 104 in Manhattan; Ms. Rosemary Gaetani, Assistant Principal, JHS 104 in Manhattan; Mr. Anthony Alvarado, Superintendent, Community School District Two in Manhattan; Marge Robbins, Director, Office of Pupil Personnel Services, Community School District Two in Manhattan; Ms. Georganne Del Canto, Former Director, Office of Student Support Services, The Board of Education; Mr. Fred Kaeser, Coordinator of Student Health Services, Community School District Two in Manhattan; Ms. Tanya Lewis, Director, Board of Education Office of Equal Opportunity; Ms. Lorraine Smith, Local Coordinator, Local Office of Equal Opportunity, Community School District Two in Manhattan, Defendants–Appellees.

Docket Nos. 00–9149, 00–9150.

United States Court of Appeals, Second Circuit.

Argued: Oct. 31, 2001.

Decided: March 29, 2002.

Lawrence T. Kass, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, (Russell E. Brooks, Douglas W. Henkin on the brief), for Plaintiffs–Appellants.

A. Orli Spanier, Assistant Corporation Counsel, Corporation Counsel of the City of New York (Michael D. Hess, Corporation Counsel of the City of New York, Kristin M. Helmers, Assistant Corporation Counsel, of counsel, on the brief), New York, NY, for Defendants–Appellees.

Before POOLER and KATZMANN, Circuit Judges, and HURD, District Judge.*

HURD, District Judge.

Plaintiff-appellants Rose Weixel ("Rose") and her mother, Frances Weixel, ("Ms. Weixel") (collectively, "plaintiffs") appeal from an August 8, 2000, judgment

of the United States District Court for the Southern District of New York (Deborah A. Batts, *District Judge*) that dismissed plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. *See Weixel v. Board of Educ. of City of New York,* No. 97–CV–9367, 2000 WL 1100395 (S.D.N.Y., August 7, 2000). Because we find that the district court failed to construe the plaintiffs' *pro se* complaint liberally, and because we find that plaintiffs have stated claims for relief under several of their causes of action, we reverse as to the district court's dismissal of plaintiffs' causes of action under the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), the Individuals with Disabilities in Education Act ("IDEA"), and Section 1983, and we direct the district court to consider plaintiffs' substantive and procedural due process claims, conspiracy claims under 42 U.S.C. § 1985, and their supplemental state law claims. However, we affirm as to the dismissal of their claims under the Equal Protection Clause of the Fourteenth Amendment and the Federal Educational Rights and Privacy Act of 1974 ("FERPA").

## I. BACKGROUND

Cases involving *pro se* plaintiffs pose a difficult dilemma for a district court. While courts are required to read a *pro se* pleading to suggest the strongest arguments that can be made, they must refrain from trying the litigant's case for him or her, or from reading necessary facts into the pleadings. District courts are often presented with the quandary of whether or not to consider legal theories suggested by the facts, but not raised or argued by

* David N. Hurd, United States District Judge for the Northern District of New York, sitting by designation.

either party. This appeal poses no such dilemma. Even a relatively conservative reading of the plaintiffs' amended complaint in the light most favorable to them reveals that the district court erred in dismissing all of their claims because many of their causes of action are viable.

The following are the facts as stated in the plaintiffs' amended complaint, which we take to be true.

During the 1993–94 school year, Rose Weixel was twelve years old and in seventh grade at JHS 104. During the second week of January 1994, Rose became chronically sick with infected tonsils, swollen glands, muscle and joint pains, headaches, nausea, abdominal pains, exhaustion, and intermittent fever. Because of her illness, Rose was unable to attend school. During this period, Ms. Weixel kept in frequent contact with Rose's guidance counselor, defendant Joan Stockhamer ("Stockhamer"), concerning Rose's absence from school.

On March 10, 1994, the principal of JHS 104, defendant Marjorie Struk ("Struk"), instructed Ms. Weixel that, if Rose were not returned to school full-time the following day, Struk would file negligence charges against Ms. Weixel with the Child Welfare Administration ("CWA"). When Rose indicated that she was not well enough to return to school, Stockhamer threatened her with removal from her home if she did not comply.

Ms. Weixel returned Rose to school in reliance on Struk's agreement that Rose would not be forced to climb stairs if she felt too sick and she would be able to lie down on a couch if she felt in need of rest. Neither of these requests were honored. On March 15, 1994, Rose was forced to climb to the fourth floor under protest and Struk failed to respond to numerous calls from a science teacher to help Rose out of class. Ms. Weixel went to the school at lunch to check on Rose, and found her sitting in a chair in the office area. Rose was crouched over in severe abdominal pain and crying.[2]

Ms. Weixel took Rose home from school and thereafter submitted a note from her pediatrician, Dr. Max Kahn, documenting Rose's disability and inability to attend school. The next day, Struk again threatened Ms. Weixel with CWA charges unless Rose were brought to school for academic, social and psychological evaluations. On March 17, Ms. Weixel submitted a physician's note that indicated Rose had symptoms of chronic fatigue syndrome ("CFS") and fibromyalgia. When Ms. Weixel submitted this note to Struk, Struk threatened her with losing custody of Rose. This charge was repeated to Rose's father later that same day.

On March 20, Rose and Ms. Weixel were at school awaiting one of Rose's evaluations when a Board of Health worker took notice of Rose's unwell state and asked why she was at school instead of at home. Ms. Weixel explained the situation and showed the worker Rose's medical records. The worker photocopied Rose's records and offered to help Rose obtain home instruction. Stockhamer then interrupted the conversation, insisting that the health worker needed to see the principal immediately, and escorted the worker from the room before Ms. Weixel could get her name. When Ms. Weixel called the director of Student Health Services at Community School District Two, Fred Kaeser ("Kaeser"), later that day and requested the worker's name, he did not assist her.

---

**2.** Plaintiffs submitted a proposed second amended complaint to the district court that would have added additional allegations concerning this and other incidents. Because the additional facts are not necessary to this decision, they will not be considered.

Instead, Kaeser consulted with Struk, then called Ms. Weixel back and told her, "You don't need her name."

Despite having medical notes in her possession, Struk then followed through on her threats to refer Ms. Weixel to CWA for educational neglect.[3] Ms. Weixel was then subjected to an intrusive and unnecessary investigation as she faced the possibility that Rose would be removed from her home. The CWA proceedings were traumatic for both Ms. Weixel and Rose.

On March 25, 1994, Rose's diagnosis of CFS was confirmed by an immunologist. Rose was prescribed anti-inflammatory medication for fibromyalgia and her CFS was treated with injections of gamma globulin. Rose also received treatment from another doctor, Dr. Ilana Goldman, for CFS and digestive problems. This treatment consisted of immuno-therapy, nutritional supplementation and natural remedies. Ms. Weixel provided documentation concerning this diagnosis and the prescribed treatments to Struk.

After receiving these additional medical records, Stockhamer contacted Rose's doctors and urged them to change their diagnoses. In March of 1994, she contacted Rose's chiropractor, Dr. Howard Benedikt and told him that Ms. Weixel had been charged with negligence and claimed that he would have to appear in court where, Stockhamer threatened, the diagnosis of CFS and fibromyalgia would be "torn to shreds." Later, on May 9, 1994, Stockhamer contacted Rose's treating physician and slandered Rose by claiming that she had a "personality disorder." Stockhamer also claimed falsely that three other doctors had examined Rose and diagnosed her

with "school phobia." In addition, Stockhamer stated that Ms. Weixel was charged with negligence.

On June 14, 1994, a child advocate attorney wrote to the Board of Education's director of Student Health Services to request disability accommodations for Rose. The attorney also noted the school's repeated violations of its confidentiality obligations. When Ms. Weixel went to the school on June 28, 1994 to gather information on Rose's curriculum, Stockhamer instructed Rose's teachers not to cooperate with her, and Struk ordered security to expel Ms. Weixel from the building. Despite the school's unwillingness to help, Ms. Weixel finally obtained 20 days of home instruction for Rose in August 1994. Rose completed her seventh grade curriculum with outstanding grades in advanced math and other subjects. As a result of this academic achievement, Rose became entitled to placement in Regents-level eighth grade.

In September 1994, Rose was well enough to return to school. Ms. Weixel provided Stockhamer with a copy of the report card issued by Rose's home school instructor and requested an appropriate placement for Rose. Struk refused to recognize Rose's completion of the seventh grade curriculum through home schooling, and refused to promote Rose to the eighth grade. Stockhamer stated that this refusal was based on Rose's past absences.

Rose's parents appealed this decision to the District Two Superintendent. The director of the superintendent's Office of Pupil Personnel Services, defendant Marjorie Robbins ("Robbins"), claimed that District Two could not reverse Struk's de-

**3.** Plaintiffs allege that this referral was in violation of several District regulations concerning such referrals—including regulations requiring school officials to accept notes certifying physical illness from medical doctors, and regulations requiring school officials to make a "thorough investigation of the circumstances surrounding the absence" before making a referral to CWA for educational neglect.

cision, in contravention of a Superintendent's Memorandum which stated that "no retentions in grades are permitted without the authorization of the Superintendent." As an alternative to being held back, plaintiffs were offered the option of Rose traveling to one of two uptown schools for classes. Ms. Weixel submitted a note from Rose's doctor which advised against putting Rose under the stress of travel.

Ultimately, Ms. Weixel obtained approval from District Two's Coordinator of Testing, Evaluation and Research to home school Rose herself.[4] On September 15, 1994, Stockhamer learned that Ms. Weixel was home schooling Rose and threatened to file further CWA charges. Stockhamer also threatened to get the District to stop Rose's home schooling.

On November 28, 1994, as a result of assistance from attorneys at Advocates for Children and the Washington Square Legal Clinic, the Board of Education informed Ms. Weixel that Rose would be recognized as an eighth grade student as JHS 104, and that Rose's placement would be determined by her performance on the eighth grade mid-term examinations. This testing was subsequently canceled on December 6, 1994, and Ms. Weixel was told that Rose would be permitted to enter the eighth grade. Also on that date, the CWA sent a letter exonerating Ms. Weixel of the educational neglect charges.

On December 8, 1994, Ms. Weixel was informed that Rose would not be placed into the class with the Regents-level curriculum that Rose had followed as a home school student. Instead, the defendants attempted to place her in a larger, lower level class without a Regents science curriculum, and in a section of that class without Regents math instruction. This placement was made solely because Rose had been absent from school for testing in March 1994. There was no academic evaluation of Rose, or consultation with her home school instructor, notwithstanding the fact that the decision to place other students in Regents-level classes was based on such criteria. At this time, Stockhamer threatened Ms. Weixel with additional CWA charges if Rose were absent.

On December 12, 1994, Struk confirmed to Rose's parents that Rose could only return to JHS 104 if she forfeited her right to be in the Regents program. This would include forfeiting the right to take the Regents examinations in June of 1995. Once again, Stockhamer threatened Ms. Weixel with child neglect charges if she did not submit to Rose's placement. Ms. Weixel did not agree to Rose's placement, and Rose was home schooled for the remainder of the 1994–95 school year. She took the Regents examinations at a parochial school, and excelled on both exams.

Also on December 12, 1994, Ms. Weixel sent a letter to the director of Student Health Services for the Board of Education, defendant Georganne Del Canto ("Del Canto"), to request review of Struk's decision. Del Canto responded by letter dated January 3, 1995, expressing regret in Ms. Weixel's dissatisfaction with Rose's placement, but denying that she had "jurisdiction" to compel the school to place Rose in advanced level classes. Del Canto's response did not address the fact that she was in charge of the office which is responsible for overseeing fair academic testing and placement of disabled students. Ms. Weixel faxed a similar letter to Robbins at the Office of Pupil Personnel Ser-

4. "Home schooling" refers to the practice of parents educating their children themselves. By contrast, "home instruction" refers to the provision of an instructor or tutor by the school district to educate a disabled student at home.

vices. Robbins responded by letter dated January, 6, 1995, approving Struk's placement decision without review.

On January 11, 1995, Ms. Weixel submitted a formal complaint, request for conciliation and a request for interim relief to the Board's Office of Equal Opportunity, along with a detailed letter explaining her situation. On January 30, 1995, she hand-delivered a copy of these papers to the Local Equal Opportunity Coordinator for Community School District Two, defendant Lorraine Smith, who assured her that her complaints would be promptly reviewed. No such review ever occurred.

In February of 1996, after Rose had entered high school, Ms. Weixel received a letter from defendant Tanya Lewis, then the director of the Board's Office of Equal Opportunity. The letter, dated February 22, 1996, stated that the office was "seeking to ensure final and complete review of [Ms. Weixel's] formal complaint," and that Ms. Weixel had to respond in writing within 14 business days of receipt of the letter. She promptly replied with a note that indicated she had submitted all of the information with her formal complaint over a year earlier, and reiterated her request for whatever relief might be available. She never received a response.

Ms. Weixel initiated this action *pro se* on behalf of herself and Rose against the defendants on December 19, 1997.[5] The plaintiffs filed an amended complaint on April 28, 1998. On June 25, 1998, defendants filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On November 3, 1998, plaintiffs requested an extension of time and leave to file a second amended complaint. This request was granted by the district court on November 17, 1998.

On December 8, 1998, plaintiffs moved to amend the complaint again, seeking to plead a notice of claim and to clarify and add additional facts. Plaintiffs included a proposed second amended complaint with this motion. On December 10, 1998, plaintiffs filed a memorandum of law in opposition to defendants' motion to dismiss.

In an order dated December 18, 1998, the district court granted the motion to amend the complaint to add a notice of claim, but otherwise denied the motion. The district court did not hear oral argument on the motion to dismiss, but instead took the motion on submission. By decision dated August 3, 2000, the district court dismissed the plaintiffs' amended complaint in its entirety for failure to state a claim upon which relief could be granted. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

Because the district court dismissed plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), our review is *de novo*. See, e.g., *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996). In reviewing dismissal of a complaint pursuant to Rule 12(b)(6), we take as true all of the allegations contained in plaintiffs' complaint and draw all inferences in favor of the plaintiffs. See *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1058 (2d Cir. 1993). A *pro se* complaint should not be dismissed unless "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering mo-

---

**5.** In January of 2000, Rose informed the district court that she was no longer a minor and would appear *pro se* on her own behalf.

tions to dismiss a *pro se* complaint such as this, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (internal quotation marks omitted). This is especially true when dealing with *pro se* complaints alleging civil rights violations. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir.2001). Accordingly, the plaintiffs' allegations in this case must be read so as to "raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (internal quotation marks omitted).

## B. ADA and Rehabilitation Act Claim

The District Court dismissed plaintiffs' claims under the ADA and the Rehabilitation Act on the grounds that plaintiffs had failed to plead that Rose was disabled within the meaning of those statutes. We reverse because, in reaching its conclusion, the District Court failed to consider plaintiffs' amended complaint under the more liberal standards afforded *pro se* litigants.

In its discussion of plaintiffs' disability discrimination claims, the District Court observed that

> In this case, Plaintiffs have not alleged any facts to show that Rose's illness substantially limited a major life activity sufficient to warrant protection under Section 504 and the ADA.... Plaintiffs' pleading makes clear that Rose's ability to learn was not substantially limited by her condition. As such, Plaintiffs have not pled that Rose suffers from a disability within the meaning of Section 504/ADA.

*Weixel*, 2000 WL 1100395, at *3. The court's reasoning was that, because Rose did well in home schooling, she was not disabled from the major life activity of learning. The court erroneously concluded that, because Rose was not learning disabled, her disabilities—CFS and fibromyalgia—did not substantially limit her major life activities, such as learning and walking. This analysis fundamentally misapprehends the nature of the disability inquiry under both the ADA and Section 504.

Both the Rehabilitation Act and the ADA protect disabled persons from discrimination in the provision of public services. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...". 29 U.S.C. § 794(a). In similar terms, the ADA declares that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.[6] Neither statute is limited in its application to persons with "learning disabilities."

■ At this early stage of the litigation, plaintiffs' complaint is sufficient to withstand dismissal if it alleges that (1) Rose has a disability for purposes of Section

---

**6.** Apart from the Rehabilitation Act's limitation to denials of benefits "solely" by reason of disability and its reach of only federally funded—as opposed to "public"—entities, the reach and requirements of both statutes are precisely the same. Neither difference is sig-

nificant to the instant appeal; therefore, it is not necessary to consider plaintiffs' claims under each statute separately. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir.2001).

504/ADA, (2) she is otherwise qualified for the benefit that has been denied[7], and (3) she has been denied the benefit by reason of her disability. *See Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998) (disability analysis under Section 504). It is clear that, read liberally and in the light most favorable to the plaintiffs, the amended complaint does state a claim for disability discrimination.

### 1. *Disabled Individual*

■ Both statutes define a "disabled individual" as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(2). In determining whether an individual has a disability for purposes of the ADA and Section 504, we have applied the three-step approach taken by the Supreme Court in *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). *See Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir.1998).

■ Under the *Colwell* analysis, plaintiff must first show that she suffers from a physical or mental impairment. *See id.* (citing *Bragdon,* 524 U.S. at 631, 118 S.Ct. 2196). Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." *See id.* Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified. *See id.* In addition, the Supreme Court has recently clarified that the identified major life activity must be "of central importance to daily life." *Toyota*

*Motor Mfg. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002).

■ In requiring the plaintiffs to show that Rose was "learning disabled" as an element of her disability discrimination claim, the district court unduly constricted the disability inquiry. Plaintiffs did not need to demonstrate that Rose could not learn in order to plead that she was "disabled" within the meaning of the Section 504/ADA. It was sufficient to demonstrate that Rose was substantially limited in *a* major life activity of central importance to her daily life because of her CFS. There is no requirement that the major life activity from which an individual is disabled be the exact activity in which the defendants are engaged.

In requiring plaintiffs to show that Rose was "learning disabled," the district court erroneously ignored the numerous allegations in the amended complaint which demonstrated that Rose's CFS substantially limited her in the major life activities of walking, exerting herself, and attending classes at school. Such claims are unquestionably sufficient to plead a disability for purposes of Section 504/ADA. As we have noted previously, "[w]e do not think that such major life activities as seeing, hearing, or walking are major life activities only to the extent that they are shown to matter to a particular ADA plaintiff. Rather, they are treated by the EEOC regulations and by our precedents as major life activities *per se.*" *Colwell,* 158 F.3d at 642.

Because, read liberally, the amended complaint pleads that Rose was substantially disabled from the major life activities of walking, exerting herself, and attending school, we find that plaintiffs have alleged

---

**7.** Defendants do not contest that Rose was otherwise qualified for the benefit denied; therefore, we do not analyze this element.

that she was "disabled" within the meaning of the Section 504/ADA. At the very least, this conclusion is "suggested" by the allegations concerning the debilitating effects of CFS upon Rose's ability to perform the basic tasks of a student. Accordingly, the District Court erred when it dismissed her Section 504/ADA claim on this basis.

### 2. Benefit Denied

The district court also dismissed plaintiffs' disability discrimination claims on the grounds that "[e]ven if Rose's CFS diagnosis qualified as a disability, Plaintiffs have not alleged that Rose was denied a benefit which was made available to other non-disabled students.... Plaintiffs' allegations concerning Rose's class placement and access to specific Regents examinations are insufficient to rise to the level of discrimination." *Weixel*, 2000 WL 1100395, at *4. This conclusion was based upon the district court's belief that the sole basis for plaintiffs' claims was the decision to place Rose in non-Regents classes.

■ The amended complaint does not merely allege that the defendants refused to place Rose in Regents-level classes for eighth grade. Read liberally, plaintiffs' amended complaint also alleges that they refused to make reasonable accommodation of Rose's disability by providing her *any* meaningful public education for much of the seventh grade, and refused to provide Rose with the home instruction necessitated by her disability. As such, the district court erred when it concluded that plaintiffs had failed to allege the denial of a "benefit" to which they were entitled. Furthermore, to the extent that plaintiffs contend that defendants refused to evaluate Rose and to place her appropriately according to her evaluation, they have alleged the denial of a benefit that other

students received—appropriate class placement on the basis of evaluation.

### C. Retaliation Claim

■ The District Court dismissed plaintiffs' retaliation claims without properly considering whether the allegations in the amended complaint could be read to support such claims. The District Court's entire discussion of the merits of these claims was as follows:

Here, Plaintiffs allege that school officials threatened and retaliated against them for complaining about "discriminatory decisions." Defendants argue that Plaintiffs fail to plead any adverse action taken by Defendants for any protected activity under Section 504 or the ADA. The Court agrees. Plaintiffs' pleading does not sufficiently allege a retaliation claim against any of the Defendants. While it is apparent that Frances Weixel did not enjoy a harmonious relationship with school district personnel, the numerous conflicts described by Plaintiffs do not support a cognizable retaliation claim. Accordingly, Defendants' motion to dismiss the retaliation claims under Section 504 and the ADA is granted.

*Weixel*, 2000 WL 1100395, at *4 (internal citation omitted). We reverse, because this brief analysis ignores the strong inference of retaliation raised by several of plaintiffs' allegations.

■ As the District Court correctly noted, the elements of a retaliation claim under either Section 504 or the ADA are "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Id.* (citing *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir.2000);

*Sands v. Runyon,* 28 F.3d 1323, 1331 (2d Cir.1994)). The amended complaint more than adequately pleads the existence of these elements.

First, plaintiffs do allege that they were seeking reasonable accommodation of Rose's disability—which constitutes protected activity under Section 504/ADA. *See Muller v. Costello,* 187 F.3d 298, 311 (2d Cir.1999) (retaliation claim can be based on, *inter alia,* request for reasonable accommodation). Moreover, the amended complaint also alleges facts which demonstrate that the defendants were aware of plaintiffs' attempts to seek such accommodation.

With regard to the third element, plaintiffs' amended complaint is replete with allegations of retaliatory conduct. These allegations include: (1) threatening (and instituting) child welfare investigations in response to plaintiffs' medically excused absences from school; (2) threatening to file child abuse charges in response to Ms. Weixel's efforts to obtain home schooling for Rose; (3) refusing to promote Rose to the eighth grade; and (4) refusing to academically evaluate and place Rose according to her abilities, allegedly in retaliation for plaintiffs' attempts to obtain reasonable accommodation of Rose's disability. The plaintiffs further allege a causal connection between the retaliatory actions and plaintiffs' efforts to obtain disability accommodation for Rose. As such, the district court erred in concluding that plaintiffs failed to allege a cognizable retaliation claim.

### D. *IDEA Claim*

The trial court dismissed the IDEA claim on the ground that plaintiffs had failed to (1) establish that Rose was disabled within the meaning of that statute, and (2) state a claim for improper educational placement, noting that the IDEA does not require the "best" placement but only an "appropriate" placement.

### 1. *Exhaustion*

■ To the extent that defendants now argue plaintiffs' IDEA claims are subject to dismissal for failure to exhaust administrative remedies, plaintiffs assert that exhaustion should be excused because they were not advised of their rights under IDEA by defendants. *Quackenbush v. Johnson City Sch. Dist.,* 716 F.2d 141, 147 (2d Cir.1983). While it is true that IDEA plaintiffs are generally required to exhaust their administrative remedies prior to seeking redress in federal court, this requirement is not inflexible. *See Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987). Exhaustion will be excused where it would be futile, "the agency has adopted a policy or practice of general applicability that is contrary to law, or it is improbable that adequate relief is available in the administrative forum," *see Mason v. Schenectady City Sch. Dist.,* 879 F.Supp. 215, 218 (N.D.N.Y.1993) (citing *Mrs. W.,* 832 F.2d at 756; *Quackenbush,* 716 F.2d at 147–48), or where, as here, the parents have not been notified that such remedies were available to them. *See J.G. v. Board of Educ.,* 830 F.2d 444, 447 (2d Cir.1987). This is so because the failure of the defendants to notify plaintiffs of their procedural rights under the IDEA "deprived [them] of the opportunity to take advantage of the procedural safeguards offered by the statute." *Quackenbush,* 716 F.2d at 147; *see also Mason,* 879 F.Supp. at 218.

### 2. *Disability*

■ The court's alternative basis for dismissal of plaintiffs' IDEA claim is similarly misplaced. The court held that "there is nothing in the Amended Complaint to suggest that Rose's illness is a health impairment which requires special

education or related services." *Weixel,* 2000 WL 1100395, at *6. Noting that plaintiffs admitted that Rose was not learning disabled, the court concluded that "[b]ecause Plaintiffs have failed to plead that Rose is a disabled child entitled to special education and related services, the Court finds that Plaintiffs' allegations are insufficient to implicate Rose's access to a free appropriate public education under the IDEA." *Id.*

The reasons advanced by the district court provide no basis to dismiss plaintiffs' claims. The scope of IDEA's coverage is not limited to students with "learning disabilities," but instead applies broadly to students who need "special education and related services" because of, *inter alia,* "other health impairments." 20 U.S.C. § 1401(3)(A). By regulation, "other health impairment" is defined as "having limited strength, vitality or alertness ... that results in limited alertness with respect to the educational environment, that—(i) [i]s due to chronic or acute health problems ...; and (ii) [a]dversely affects a child's educational performance." 34 C.F.R. § 300.7(c)(9). Special education is defined to include "instruction conducted ... in the home ...". 20 U.S.C. § 1401(25)(A). Even a conservative reading of the amended complaint demonstrates that plaintiffs' allegations are sufficient to meet these definitions.

The amended complaint clearly alleges that Rose suffered from "other health impairments," due to which she required "special education and related services." The amended complaint alleges that Rose had disabling physical ailments that limited her strength, vitality and alertness and made it impossible for her to attend school. As a result of her inability to attend classes, she required "special education" in the form of home instruction. As such, the district court erred in concluding that plaintiffs did not allege that Rose was a "disabled child" within the meaning of the IDEA.

### 3. *Educational placement*

Finally, the district court erred when it concluded that the plaintiffs had failed to allege that Rose was denied an educational placement to which she was entitled. *See Weixel,* 2000 WL 1100395, at *6–*7. The district court based its conclusion on the belief that plaintiffs' allegations under the IDEA were limited to the claim that the defendants' failed "to place Rose in eighth grade classes that offered Regents examinations in mathematics and earth science". *Id.* at *7. This analysis did not liberally construe and consider all of plaintiffs' allegations concerning the IDEA.

■ With regard to Rose's education from January through July 1994, a liberal reading of the allegations in the amended complaint supports the argument that defendants failed to provide *any* meaningful educational placement to Rose during the second half of her seventh-grade year. The amended complaint alleges that Rose was unable to attend classes because of her CFS. Further, the complaint alleges that she was only able to complete her seventh-grade education through home schooling, and that the defendants refused to provide such instruction to her.[8] As such, plaintiffs did allege that Rose was denied an appropriate educational placement during this time period.

---

8. While the defendants did finally provide Rose with 20 days of home instruction in August of 1994, this does not ameliorate the failure to identify her as a child with a disability during the 1993–1994 academic year and to provide her with a meaningful educational placement during that period.

Moreover, with regard to Rose's eighth grade placement in non-Regents classes, the amended complaint does allege a basis upon which to conclude that this placement was not an appropriate educational placement within the meaning of the IDEA. We have previously observed that, "for an IEP to be reasonably calculated to enable the child to receive educational benefits, it must be likely to produce progress, not regression." *M.S. ex rel S.S. v. Board of Educ. of City Sch. Dist. of City of Yonkers,* 231 F.3d 96, 103 (2d Cir.2000), *cert. denied,* 532 U.S. 942, 121 S.Ct. 1403, 149 L.Ed.2d 346 (2001) (citation and internal quotation omitted). If, as alleged in the amended complaint, this placement decision was not based upon a consideration of Rose's educational abilities and needs, but instead was based on the discriminatory and retaliatory refusal to academically evaluate Rose, then such a placement would not be "reasonably calculated" to ensure that Rose received a meaningful educational benefit. Accordingly, the district court erred in dismissing plaintiffs' IDEA claims.

### E. FERPA Claim

 The district court dismissed the FERPA claim on the grounds that plaintiffs had failed to allege a systematic policy of violating students' privacy. Plaintiffs assert that they did allege such a policy or practice in that they alleged that defendants contacted Rose's doctors, a potential home instructor, and a lawyer to provide defamatory and inaccurate information about Rose. Assuming these allegations to be true, they simply are not sufficient to constitute a "policy or practice" of permitting unauthorized release of educational records by the defendants. *See Gundlach v. Reinstein,* 924 F.Supp. 684, 690 n. 7 (E.D.Pa.1996), *aff'd,* 114 F.3d 1172 (3d Cir. 1997). Accordingly, the district court

properly dismissed plaintiffs' FERPA claim.

### F. Equal Protection Claim

 The district court dismissed the equal protection claim on the grounds that plaintiffs had failed to allege discrimination against a particular class of students. Where, as here, a complaint fails to allege an "intent to disadvantage all members of a class that includes plaintiff," *Sound Aircraft Svcs., Inc. v. Town of East Hampton,* 192 F.3d 329, 335 (2d Cir.1999)(quoting *Crawford–El v. Britton,* 523 U.S. 574, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)), such a claim is properly dismissed.

### G. Section 1983

Plaintiffs' claims for damages pursuant to Section 1983 were dismissed by the district court on the grounds that, because "the Court has determined that Plaintiffs did not plead any violations of their rights secured by the Fourteenth Amendment, Section 504/ADA, IDEA or FERPA," they had failed to allege a "cognizable claim for damages pursuant to [Section] 1983." *Weixel,* 2000 WL 1100395, at *8. Because, as noted above, plaintiffs have stated causes of action under Section 504/ADA and the IDEA, the district court erred in dismissing their claims for damages under Section 1983.

As we have reinstated the majority of plaintiffs' amended complaint, we have not considered plaintiffs' arguments with regard to their substantive and procedural due process claims and their conspiracy claims under Section 1985—the merits of which were not considered by the district court. On remand, the district court is directed to consider the viability of these causes of action. In addition, because plaintiffs' amended complaint pleads viable federal law claims, their supplemental state law claims should not have been dis-

missed pursuant to 28 U.S.C. § 1367(c). Accordingly, the district court's dismissal of the plaintiffs' state law claims must also be reversed.

## CONCLUSION

As plaintiffs have alleged sufficient facts to support their causes of action under the Rehabilitation Act, the ADA, and the IDEA, we reverse the district court's dismissal of these claims. However, because plaintiffs have failed to state claims under the Equal Protection Clause and FERPA, we affirm the decision of the district court insofar as it dismissed such claims. Accordingly, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.