A.A., et al., Plaintiffs,

v.

**BOARD OF EDUCATION, Central Islip Union Free School District, et al., Defendant.**

**No. CV 96–4966.**

United States District Court, E.D. New York.

April 18, 2002.

Wasserman & Steen, By Lewis M. Wasserman, Esq., Patchogue, for Plaintiff.

Eliot Spitzer, Attorney General, By Susan M. Connolly, Esq., Assistant Attorney General, New York State Department of Law, Hauppauge, for New York State Defendants.

New York Lawyers for the Public Interest, Amicus Curiae, By Marianne L. Engelman Lado, Esq., Roberta Mueller, Esq., New York.

Stroock Stroock & Lavan LLP, By James A. Shifren, Esq., Adam Grace, Esq., New York, for Amicus Curiae.

Daniel Greenberg, Esq., Special Master, Ingerman, Smith, LLP., Northport.

## ORDER

WEXLER, District Judge.

This action was commenced on behalf of a group of students in the Central Islip Union Free School District (the "District" or the "School District") against the District, the State of New York (the "State" or "New York"), Richard Mills, the New York State Commissioner of Education ("Commissioner Mills") and George E. Pataki, the Governor of the State of New York ("Governor Pataki"). Plaintiffs have settled their claims against the School District. Accordingly, the defendants that remain are the State of New York, Commissioner Mills and Governor Pataki (collectively the "State Defendants"). Presently before the court is the motion of the State Defendants to dismiss the remaining claims as presently set forth in Plaintiff's Third Amended Complaint (the "Complaint").

## BACKGROUND

### I. *The Complaint*

Plaintiffs style this case as a class action and describe the members of the class as current and former students attending school within the School District who were born between December 31, 1975 and January 1, 1990, and were classified as students with disabilities by the Central Islip Committee on Special Education as of October 10, 1996.

Federal claims are asserted pursuant to: (1) the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400–1485 (the "IDEA"); (2) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") and (3) 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs assert a state law claim pursuant to the New York State Education Law §§ 4401–4410 (the "State Education Law").

Plaintiffs' claims detail several alleged failures of the School District in their administration of special education programs. It is alleged, *inter alia*, that the District failed to: (1) timely forward referrals to the Committee on Special Education; (2) properly evaluate special education students; (3) include necessary information on Individualized Education Plans; (4) retain certified teachers; (5) follow due process and impartial hearing procedures; (6) properly group students and (7) provide a guidance program for children in grades kindergarten through six.

The factual basis for the Plaintiffs' claims against the State Defendants focus on these defendants' alleged failure to monitor and insure compliance by the School District with the laws governing the education of students with disabilities.

### II. *The Settlement with the School District*

In November of 2000, Plaintiffs settled their claims with the School District (the "Settlement"). The Settlement provides for the payment of damages in the amount of $735,000 along with detailed injunctive relief. Among the many requirements of the injunction are:

● the identification by the School District of needed personnel on a short and long term basis;

● the training of school personnel regarding the administration of the IDEA, Section 504, the Americans With Disabilities Act and the State Education Law;

- administrative reorganization of the District Committee on Special Education;
- implementation of a plan for providing students with an appropriate education in the least restrictive environment;
- particularized percentages to be reached regarding the number of students who may be classified as in need of special education services, those who must be educated in separate settings and particularities regarding time spent outside of the regular classroom setting.

The parties to the Settlement agreed to appointment of a Special Master for the purpose of monitoring and ensuring compliance with all injunctive relief.

### III. *Remaining Claims*

Despite the broad nature of injunctive relief set forth in the Settlement, Plaintiffs continue to press their claims against the State Defendants. As noted above, the State Defendants are charged in the Complaint with failing to monitor and enforce the School District's compliance with laws regarding the education of children with disabilities. Plaintiffs state that each violation by the School District has "existed and/or continues to exist with the knowledge and acquiescence of the State Defendants."

### IV. *Relief Sought*

The Complaint seeks a declaration that the State Defendants have failed to ensure that the School District complied with the IDEA, the Rehabilitation Act and the New York State Education Law. In addition to alleging violation of these statutes, Plaintiffs seek to enforce compliance with the federal statutes by way of an action pursuant to Section 1983.

As part of their claim for injunctive relief, Plaintiffs ask the court to direct the State Defendants to identify those students who have not been provided appropriate special education and related services and to order the State Defendants to provide the education required by law. Plaintiffs also seek an order directing the State Defendants to design and submit a plan for court approval that assures that children with disabilities residing in the School District are timely and appropriately evaluated and, if necessary, provided appropriate special education and related services. This request seeks an order requiring, *inter alia*, the School District to educate students in the least restrictive environment, establish adequate transition services and to group children according to their needs. Appointment of a Special Master is sought to monitor the State Defendants' implementation of any plan required by an order of this court.

By way of damages, Plaintiffs seek compensatory special education and related services pursuant to the IDEA and Section 504. They also seek compensatory money damages pursuant to Section 504 and Section 1983. Finally, Plaintiffs seek, along with the costs and disbursements associated with the litigation, an award of reasonable attorneys' fees.

### V. *The State Defendants' Motion to Dismiss*

The State Defendants attack Plaintiffs' claims on various fronts. Complete dismissal of the complaint is sought on the ground that Plaintiffs have failed, as required by the IDEA, to exhaust their administrative remedies. The State Defendants also seek complete dismissal by comparing the relief afforded by the Settlement to the relief now sought from the State Defendants. Specifically, it is argued that Plaintiffs are now obtaining from the School District everything to which they would be entitled, leaving no relief that the State can or should provide.

In the event that the complaint is not dismissed on the grounds raised above, the State Defendants seek dismissal of certain damages claims. First, the State Defendants argue that neither money damages nor equitable relief is available for past IDEA violations. Next, the State Defendants attack Plaintiffs' claims on Eleventh Amendment grounds. Specifically, it is argued that the Eleventh Amendment bars any money damages claim against the State (whether pursued under the IDEA, Section 504, Section 1983 or state law) as well as any such claim against a state official sued in his official capacity.

The State Defendants also argue that Plaintiffs cannot make any claim for injunctive relief under an *Ex Parte Young* theory. Finally, these defendants seek to bar any claim based upon an 1991 site review of the School District conducted by the State on the ground that this matter is newly raised in the third amended complaint and is time-barred.

## DISCUSSION

### I. *Exhaustion of the IDEA Claim*

■ The State Defendants note correctly that the IDEA contains an exhaustion requirement. *See* 20 U.S.C. § 1415(f). That requirement, however, is flexible and, among those circumstances where exhaustion is excused, are cases where plaintiffs allege a systemic failure. *Weixel v. Board of Educ., City of New York*, 2002 WL 496997 *9 (2d Cir. March 29, 2002); *J.G. v. Board of Educ.*, 830 F.2d 444, 446, 447 (2d Cir.1987). The court holds that the claims raised herein fall within this exception to the exhaustion requirement and therefore, excuses this procedural bar to the claims of the Plaintiff class.

The court further excuses exhaustion in this case on another ground. This case was first filed in 1996. Had the State Defendants raised the exhaustion issue at that point, resort to administrative remedies might not have been futile. To raise the issue at this point in the litigation, when a number of the children affected may already have completed their education, would not result in an effective administrative solution. Accordingly, in light of the systemic nature of Plaintiffs' claims and the failure to raise the exhaustion argument for nearly six years, the court excuses the exhaustion requirement in this case and refuses to dismiss the IDEA claim for failure to exhaust administrative remedies.

### II. *Effect of the Settlement Agreement*

It is the position of the State Defendants that Plaintiffs have already received all of the injunctive relief to which they are entitled by virtue of the Settlement. Accordingly, the State seeks dismissal of this entire action as moot.

The court has reviewed the Settlement and concurs that the relief agreed to by the District is broad and far-reaching. Indeed, that relief includes appointment of a special master for the purpose of monitoring compliance with the parties' agreement.

Notwithstanding the broad nature of the relief that is already in place, the court is not, at this time, in a position to characterize the nature of the relief sought by Plaintiffs against the State Defendants. Accordingly, the court will go on to consider the grounds for partial dismissal of Plaintiffs' claims. The court will also give Plaintiffs the opportunity to articulate their specific demands and communicate those demands to the State Defendants in an orderly procedure set forth at the end of this memorandum and order.

### III. *Relief Available Under the IDEA*

■ The IDEA creates a private right of action to enforce every child's right to a "free appropriate public education." 20

U.S.C. § 1400(c). This is defined to include special education and related services tailored to the needs of individual children. *See Board of Educ. v. Rowley,* 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). While an IDEA action may culminate in an order requiring that certain services be provided to a child, the statute does not provide for awards of compensatory damages. *Wenger v. Canastota Cent. Sch. District,* 979 F.Supp. 147, 152 (N.D.N.Y.1997), *aff'd. mem.,* 181 F.3d 84 (2d Cir.1999). Nor does the statute allow for an award of punitive damages. *Butler v. South Glens Falls Cent. Sch. District,* 106 F. Supp 2d 414, 419 (N.D.N.Y.2000).

■ Actual funds, however, may be awarded to an IDEA plaintiff under the narrow circumstance where a parent unilaterally obtains (and pays for) special education services to which it is ultimately determined the child was entitled. In such cases, the reimbursement of cash payments made by parents are not a form of damages but a "retroactive payment that a school district should have paid all along." *Wenger,* 979 F.Supp. at 152, citing, *Burlington Sch. Committee v. Department of Educ. of Massachusetts,* 471 U.S. 359, 370–71, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

In light of the foregoing, the court holds that general awards of compensatory and/or punitive damages are not available under the IDEA. Money may be awarded under the statute only to the extent necessary to reimburse parents for services they sought and paid for on a unilateral basis. *Accord Butler,* 106 F.Supp.2d at 419. Plaintiffs make no such reimbursement claims here. The court observes that the State Defendants make no claim that Plaintiffs' IDEA claims are barred by the Eleventh Amendment. Accordingly, the court need not engage in an analysis as to whether claims for reimbursement of unilaterally obtained services are barred by sovereign immunity. To the extent that Plaintiffs seek compensatory education, such claims are discussed below.

IV. *Eleventh Amendment Immunity and Money Damages Claims*

A. *Eleventh Amendment Immunity in General*

The Eleventh Amendment to the United States Constitution (the "Eleventh Amendment") renders an unconsenting state immune from lawsuits in federal court brought by that state's own citizens or citizens of another state. *Burnette v. Carothers,* 192 F.3d 52, 57 (2d Cir.1999); *New York City Health and Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir.1995). Thus, the Eleventh Amendment prohibits courts from exercising jurisdiction over lawsuits against a state unless they waive sovereign immunity or Congress has expressly and validly abrogated that immunity. *Board of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Tuchman v. State of Connecticut,* 185 F.Supp.2d 169, 172 (D.Conn.2002)

The State Defendants include the State of New York as well as two individuals sued in their "official capacities." Lawsuits against state officials in their official capacities are not lawsuits against these individuals but, rather, are lawsuits against the official's office. As such, they are "no different from a suit against the State itself." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, the damages sought are, in effect, damages from the State and the Eleventh Amendment immunity analysis is the same. *See Burnette,* 192 F.3d at 57.

1. *Section 504 Claims for Money Damages*

■ In *Garcia v. SUNY Health Sciences Center of Brooklyn,* 280 F.3d 98 (2d

Cir.2001), the Second Circuit held that a private plaintiff may not maintain a cause of action for money damages against New York State for any violation of Title II of the Americans With Disabilities Act ("ADA"). Instead, to comport with any sovereign immunity abrogation authority pursuant to the Fourteenth Amendment to the United States Constitution, money damages against a the state are available only if Plaintiff can show that the Title II ADA violation was motivated by either "discriminatory animus or ill will due to disability." *Garcia*, 280 F.3d at 112.

As recognized by the Second Circuit in *Garcia*, the analysis of whether money damages are available against a state for a violation of Section 504, differs from the money damages question under the ADA. This is because Section 504 was enacted pursuant to Congressional authority granted by the spending clause of Article I of the Constitution. *Id.* at 113. When Congress passes a statute under this authority, it may condition a state's acceptance of funds upon a waiver of sovereign immunity. *Id.* Such a waiver will be found, however, only where a state has made a knowing waiver of immunity. *Garcia*, 280 F.3d at 114.

In *Garcia*, the Second Circuit refused to find that New York's acceptance of Section 504 funds was a knowing waiver of its sovereign immunity. *Garcia*, 280 F.3d at 114–15. This is because, at the time that the funds were accepted, New York was under the reasonable belief that it had no immunity to ADA claims. When it accepted Section 504 claims, then, New York could not have believed that it was waiving any rights. Because a waiver is effective only if it is knowing and intentional, the acceptance of Section 504 federal funds prior to the time when the Supreme Court held that the ADA did not abrogate Eleventh Amendment immunity, did nothing to abrogate the immunity of New York State

from money damages claims. *Garcia*, 280 F.3d at 114–15.

The result here must be the same as in *Garcia*. The funds at issue in this lawsuit were accepted by the State of New York between 1990 and 1996—years before New York could have known that the ADA did not validly abrogate the Eleventh Amendment. Accordingly, New York State's acceptance of funds in this matter cannot be relied upon to abrogate the state's immunity from money damages claims arising from violations of Section 504. The court therefore dismisses any claim for money damages under Section 504. *Accord Sacay v. The Research Foundation of the City University of New York*, 2002 WL 482337 *11 (E.D.N.Y. March 27, 2002); *Hamilton v. City College of the City University of New York*, 173 F.Supp.2d 181, 185 (S.D.N.Y.2001); *Crosby v. New York State Dep't. of Labor*, 2001 WL 1247888 *2 (N.D.N.Y. October 17, 2001).

2. *Section 1983 Claims for Money Damages*

A plaintiff may enforce the rights granted by the IDEA by way of an action brought pursuant to Section1983. *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987); *M.H. v. Bristol Bd. of Educ.*, 169 F.Supp.2d 21, 29 (D.Conn.2001); *Butler*, 106 F.Supp.2d at 420. Likewise, rights alleged pursuant to Section 504 may also be pursued by way of a Section 1983 cause of action. *Weixel*, 2002 WL 496997 *11(Section 1983 claim can be pursued where plaintiff stated a claim pursuant to Section 504, the ADA and the IDEA). The fact that a Section 1983 action may be pursued, however, does not automatically translate to a right to receive money damages where the named defendant is a state. In such cases, as in all cases brought pursuant to Section 1983, the Eleventh Amendment governs the dam-

ages analysis. It is that analysis to which the court turns.

■ It has long been held that Section 1983 does not allow a State to be called into Federal Court to answer in damages for the alleged deprivation of a federal right. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Absent a valid waiver, such lawsuits are barred by the Eleventh Amendment. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Kostok v. Thomas,* 105 F.3d 65, 68 (2d Cir.1997); *Lee v. New York State Dep't of Correctional Services,* 1999 WL 673339 * 13 (S.D.N.Y. August 30, 1999); *Baird v. New York State Exec. Department,* 1998 WL 690951 * 2 (N.D.N.Y. September 28, 1998); *Levy v. Lerner,* 853 F.Supp. 636, 640 (E.D.N.Y.1994), *aff'd,* 52 F.3d 312 (2d Cir.1995).

Where, as here, Plaintiff commences a Section 1983 lawsuit in federal court seeking money damages, New York has not waived its immunity from a damages award and the case is barred. *Jones v. New York State Div. Of Military & Naval Affairs,* 166 F.3d 45, 49 (2d Cir.1999); *Trotman v. Palisades Interstate Park Commission,* 557 F.2d 35, 39 (2d Cir.1977); 557 F.2d at 39; *Marable v. Kurtz,* 2000 WL 1279763 * 5 (S.D.N.Y. September 11, 2000); *Stephens v. State University of New York at Buffalo,* 11 F.Supp.2d 242, 251 (W.D.N.Y.1998); *Levy,* 853 F.Supp. at 640.

Plaintiffs counter this argument by relying on certain cases awarding money damages under Section 1983 as compensation for a violation of the IDEA. *See Butler,* 106 F.Supp.2d 414, 420 (N.D.N.Y.2000); *Mason v. Schenectady City Sch. District,* 879 F.Supp. 215, 220 (N.D.N.Y.1993). The cases relied upon, however, were brought against school districts and none allowed an award of money damages against a state. Nor do any of the cases cited discuss the Eleventh Amendment immunity issue. Under these circumstances, the court finds these cases unpersuasive and instead adheres to the well-established rule that money damages are not available against the State of New York in a lawsuit brought pursuant to Section 1983.

### 3. State Law Claims for Money Damages

■ Just as the Eleventh Amendment bars claims for relief under federal law, it acts as a bar to state law claims brought against a state in federal court. *Winokur v. Office of Court Administration,* 2002 WL 397657 *6 (E.D.N.Y. March 14, 2002).

Plaintiffs' memorandum of law characterizes their state law claims not as state claims but, instead, as "federal" claims. It appears that Plaintiffs argue that state law is referenced only to incorporate standards for referral when enforcing the IDEA. The court has decided the damages issues with respect to the IDEA. To the extent that Plaintiffs' state law claims, are, in fact, IDEA claims, the governing law has been previously discussed.

### 4. Statute of Limitations

As noted, the State Defendants seek to bar any claim based upon an 1991 site review of the School District conducted by the State on the ground that this matter is newly raised in the third amended complaint and is time-barred. This claim raises factual questions that are not appropriately dressed in the context of this motion. The court will await trial of this matter and, at that time, rule on the timeliness of this claim.

### V. Injunctive Relief: Ex Parte Young

Requests for injunctive relief against a State do not stand on the same ground as those for money damages. In the limited

circumstance where a state official is acting in a manner that is contrary to federal law, a court may award certain injunctive relief to remedy that violation. Such actions are authorized under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir.2000); *Baird v. New York State Executive Department*, 1998 WL 690951 *2–3 (N.D.N.Y. 1998).

■ *Ex parte Young* allows a federal court challenge to the actions of a state official who is acting in an unconstitutional manner. Such lawsuits are authorized to "vindicate the supremacy of [federal] law." *Ward*, 207 F.3d at 119 (citations omitted); *New York City Health and Hosp. Corp.*, 50 F.3d at 134; *see Pennhurst*, 465 U.S. at 105, 104 S.Ct. 900. Thus, where an injunction seeks to remedy an ongoing state practice that violates federal law, imposition of prospective injunctive relief does not run afoul of the Eleventh Amendment. *Baird* 1998 WL 690951 *3. Even if the prospective relief ordered has an effect on the state treasury, it is not barred, by that fact alone, by the Eleventh Amendment.

■ Importantly, lawsuits brought under *Ex parte Young*, may not culminate in an order compensating for past violations of federal law. A plaintiff may not, therefore, seek even equitable relief (such as reinstatement to an employment position) as compensation for past, isolated state conduct. Instead, plaintiff's remedy is limited to prospective relief and certain ancillary damages. Ancillary damages permissible under the Eleventh Amendment include the imposition of fines and awards of attorneys' fees. *New York City Health and Hosp. Corp.*, 50 F.3d at 135.

Applying the principles above leads to the conclusion that, even in an action brought pursuant to an *Ex parte Young* theory, money damages as a remedy for past violations of federal law are not available against the State Defendants. Prospective injunctive relief for any finding of a continuing violation of federal law, along with any applicable attorneys' fee, is, however, available to Plaintiffs.

■ As a final matter, the court addresses the State Defendants' argument that an *Ex parte Young* action may not be pursued for a violation of Section 504. In *Garcia*, the court noted that the Eleventh Amendment bar to lawsuits brought for a violation of the ADA would not bar an action for prospective injunctive relief on an *Ex parte Young* theory. *Garcia*, 280 F.3d at 115; *see Board of Trustees of the University of Alabama v. Garrett* 531 U.S. 356, 374 n. 9, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The State Defendants argue that while such lawsuits might be authorized to redress a violation of Title II of the ADA, they may not be brought pursuant to Section 504. Specifically, it is argued that because Section 504 prohibits conduct only by "entities," and an *Ex parte Young* lawsuit names only an individual as a defendant, it is not a proper *Ex parte Young* action. This position is without merit. Both Section II of the ADA (which was at issue in *Garcia*) and Section 504 prohibit conduct by "entities." The Second Circuit's holding that an *Ex parte Young* lawsuit may be brought to redress a violation of Title II of the ADA is, therefore, equally applicable to lawsuits brought pursuant to Section 504. Thus, Plaintiffs may pursue their claims (including their Section 504 claims) for prospective injunctive relief against the State Defendants.

## VI. *Compensatory Education*

■ Much is made in the parties' memoranda as to the availability of an award for "compensatory education." Such awards require that provision be made for providing students with the special education services to which they have

always been entitled. The parties' opposing positions appear to stem from a semantical argument—the State refers to compensatory education as traditional compensatory damages and Plaintiffs refer to such awards a equitable relief.

Case law holds that claims for compensatory education, while requiring the expenditure of funds, are not viewed in the same manner as claims for general compensatory damages for Eleventh Amendment purposes. While such claims may involve the expenditure of funds, they are characterized as prospective in nature and therefore are not barred by the Eleventh Amendment. *Garro v. State of Connecticut*, 23 F.3d 734, 736 (2d Cir.1994); *see Burr v. Sobol*, 888 F.2d 258, 259 (2d Cir. 1989). Thus, to the extent that Plaintiffs can prove any rights to compensatory educational services, such awards will not be precluded by the Eleventh Amendment.

## VII. *Summary of Holdings and Relief Available*

For the reasons set forth above, the court holds as follows:

- Plaintiffs' IDEA is not barred by the failure to exhaust administrative remedies and that claim may be pursued against the State Defendants;
- The State Defendants make no claim of Eleventh Amendment immunity from IDEA claims and, in light of that fact, the court holds that no such immunity bars the IDEA claims herein;
- Neither general compensatory nor punitive damages are available under the IDEA;
- While claims for reimbursement of amounts unilaterally spent by parents for special education services are available under the IDEA, Plaintiffs have made no such claims in this action and therefore no award reflecting any such payment will be made;

- The State Defendants have not waived their Eleventh Amendment sovereign immunity from claims based upon violations of Section 504;
- Plaintiffs may pursue their Section 504 claims by way of an *Ex parte Young* action for prospective injunctive relief. Such relief includes claims for compensatory education;
- The State Defendants have not waived their Eleventh Amendment sovereign immunity from any claim based upon a violation of New York State law;
- Plaintiffs may pursue their IDEA and Section 504 claims by way of an action pursuant to Section 1983. However, Plaintiffs may not recover money damages in any such action for the remedy of past violations of federal law. Instead, Plaintiffs may recover only an award of prospective injunctive relief under an *Ex parte Young* theory. Such relief includes claims for compensatory education and the ancillary relief of attorneys' fees;
- The parties are to communicate with each other regarding Plaintiffs' demands and the State Defendants' responses thereto as follows:

If Plaintiffs wish to proceed to trial with their claims they are ordered to communicate that position to the State Defendants in writing within thirty days of the date of this order. At the same time, Plaintiffs must make a written demand upon the State Defendants that articulates the precise injunctive relief and compensatory education services that they seek. The State Defendants shall respond to that demand, in writing, within thirty days of their receipt of Plaintiffs' demand. The parties are ordered, within fifteen days of Plaintiffs' receipt of the State Defendants' response to Plaintiffs' demand, to contact the court and advise the court of the status of this matter. If this case has not been

settled by that time, a final pretrial conference will be held and a firm trial date set.

### CONCLUSION

For the foregoing reasons, the motion to dismiss Plaintiffs' complaint is granted in part and denied in part. The Clerk of the Court is directed to terminate the motion.

SO ORDERED.