**B.H., et. al., Plaintiffs,**

v.

**SOUTHINGTON BOARD OF EDUCATION, et al., Defendants.**

**No. CIV.A. 3:02 CV 252 (SRU).**

United States District Court, D. Connecticut.

July 25, 2003.

David C. Shaw, Andrew Alan Feinstein, Law Offices of David C. Shaw, Bloomfield, CT, for plaintiffs.

Lawrence J. Campane, Mark J. Sommaruga, Nicole Alexandra Bernabo, Sullivan, Schoen, Campane & Connon, Hartford, CT, Nyle Kimrick Davey, Thomas M. Fiorentino, Attorney General's Office, Hartford, CT, for defendants.

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

UNDERHILL, District Judge.

B.H., a disabled minor, by and through his parents, Mr. and Mrs. C.H. ("the parents") (collectively, "the plaintiffs"), bring this action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415 et seq. ("IDEA"), and 42 U.S.C. § 1983. The plaintiffs allege that the defendants, the Southington Board of Education and its employees, Frances J. Hagg and Anthony D'Angelo [1] (collectively, "the Board Defendants"), and the Connecticut Department of Education, through its Commissioner Theordore Sergi (collectively, "the State Defendants"), violated B.H.'s rights under the IDEA in connection with his education in the Southington School District. The plaintiffs seek monetary and equitable relief. Pending before the court are the State and Board Defendants' motions to dismiss pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the following reasons, the State Defendants' motion to dismiss is granted and the Board Defendants' motion to dismiss is granted in part, and denied in part.

## I. BACKGROUND

### A. *The Statutory Scheme of the IDEA*

The IDEA was intended as an "an ambitious federal effort to promote the education of handicapped children" by requiring states that receive funding from Congress to provide "all children with disabilities" with a "free appropriate public education." ("FAPE"). *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 62 (2d Cir.2000); 20 U.S.C. § 1412(a)(1)(A). "This 'free appropriate public education' must include 'special education and related services' tailored to meet the unique needs of the particular child, 20 U.S.C. § 1401(8), and must be 'reasonably calculated to enable the child to receive educational benefits' ...." *Voluntown Bd. of Educ.*, 226 F.3d at 62. The particular educational needs of a disabled child and the services required to meet those needs must be set forth at least annually in a written individualized education plan ("IEP").[2] *A.S. ex rel. P.B.S. v. Board of Educ. of Town of West Hartford*, 245 F.Supp.2d 417, 419 (D.Conn.2001); 20 U.S.C. § 1414(d)(4)(A)(i).

The IDEA also requires states to enact various procedural safeguards to ensure that the child is receiving a FAPE, and that, if he is not, avenues are available to redress any problems. *Cordero by Bates v. Pennsylvania Dept. of Educ.*, 795 F.Supp. 1352, 1355 (M.D.Pa.1992); 20 U.S.C. § 1415(a-b). In general, under Connecticut law, if parents are dissatisfied with the "identification, evaluation, or educational placement of the child," they may request the State Educational Agency ("SEA"), in this case, the State Defendants, to appoint an impartial hearing officer to conduct an administrative due process hearing to resolve their concerns. 20 U.S.C. § 1415(f); *see also* Conn. Gen.Stat. § 10-76a et seq. (setting forth the procedural and substantive obligations of parents and educational agencies in the appeals process under state law); *M.C. ex rel. v. Voluntown Bd. of Educ.*, 178 F.R.D. 367, 370 (D.Conn.1998) ("Connecticut legislature empowered only the state depart-

---

**1.** Frances J. Haag and Anthony D'Angelo are the Senior Coordinator and Coordinator, respectively, of Special Education for the Town of Southington.

**2.** The IEP is formulated by a "PPT Team" composed of, among others, the child's parents, a school official qualified in special education, the child's teacher, and, where appropriate, the child. *See* 20 U.S.C. § 1414(d)(1)(B).

ment of education to schedule due process hearings."). Any party aggrieved by the outcome of the due process hearing may bring a civil action in the Connecticut Superior Court or the U.S. District Court. *See* 20 U.S.C. § 1415(i)(2).

## B. *Facts* [3]

For purposes of this motion, the factual allegations made in the Complaint are assumed to be true, and all inferences are drawn in favor of the plaintiffs. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998).

· B.H. is a disabled child with Pervasive Developmental Disorder and Absence Epilepsy. These disabilities inhibit B.H.'s learning and result in significant communication and sensory processing problems. Because of these disabilities the Board Defendants have identified B.H. as a student who is eligible to receive special education and related services. Until approximately November 1, 2001, pursuant to a settlement of a prior due process hearing, B.H. was receiving special education and related services in the Southington public schools through a collaborative effort by the Board Defendants and a private agency. Following a series of meetings in the Fall of 2001, the PPT agreed upon a new IEP, (hereinafter, the "October 17, 2001 IEP"). The Board Defendants, however, inconsistently and inadequately implemented the October 17, 2001 IEP. Specifically, the Board Defendants failed to hire both a qualified consultant to support the program and the appropriate staff to implement the program. Moreover, the lack of staffing and support became so pro-

nounced that the parents were forced to remove B.H. from school, on or about November 1, 2001, to protect him from harm. Since November 1, 2001, B.H. has had an extremely limited special education program.

The Board Defendants repeatedly assured the parents that these problems would be promptly corrected. The parents relied upon these representations and, as a result, delayed filing a request for a due process hearing.

On December 6, 2001 the plaintiffs requested: (1) a due process hearing to challenge the Board Defendants' failure to implement the October 17, 2001 IEP since at least October 31, 2001; and (2) that the hearing officer enter an interim order requiring the Board Defendants to implement the October 17, 2001 IEP. Of note, the plaintiffs did not request that the State Defendants be included at the due process hearing. On December 11, 2001 Hearing Officer Slez entered an interim order directing the Board Defendants to immediately implement the October 17, 2001 IEP. The Board Defendants did not object to the order, yet thereafter they failed to implement the October 17, 2001 IEP and hire the staff necessary to enable B.H. to return to school.

On December 17, 2001, the parents requested the State Defendants to enforce Hearing Officer Slez's interim order. On December 19, 2001, the State Defendants responded that "it is not within the purview of this office to decide on the implementation of a hearing officer's interim order since [a] due process hearing is

---

**3.** The facts outlined in this section of the opinion are taken from the allegations contained in the plaintiffs' First Amended Complaint (the "Complaint") and Hearing Officer Margaret J. Slez's ("Hearing Officer Slez") January 31, 2002 decision. *R.M. ex rel. J.M. v. Vernon Bd. of Educ.*, 208 F.Supp.2d 216, 217 (D.Conn.2002) (noting that a court can

consider facts included in a Hearing Officer's Opinion in ruling on a motion to dismiss an IDEA claim), *citing Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (stating that the court can consider administrative materials in ruling on a motion to dismiss if those materials serve as the basis for the plaintiffs' claim).

pending and such an order is not a final decision."

On January 29, 2002 the parties attended the due process hearing. At the hearing, the parties conveyed to Hearing Officer Slez that the Board Defendants had agreed to hire Ms. Luddy, a mutually acceptable independent consultant, to coordinate B.H.'s IEP.[4] Hearing Officer Slez then dismissed the plaintiffs' complaint, without prejudice, for lack of jurisdiction on the ground that there was no longer a live controversy before her.[5]

## II. STANDARDS OF REVIEW

The Board and State Defendants have each moved pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) to dismiss the Complaint.

### A. *Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

■ A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). In considering a motion to dismiss for lack of subject matter jurisdiction, a court must "accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Serrano v. 900 5th Ave. Corp.,* 4 F.Supp.2d 315, 316 (S.D.N.Y.1998) (citations omitted). The court may consider evidence outside the pleadings, such as affidavits and other documents, in deter-

mining the existence of jurisdiction. *See Makarova,* 201 F.3d at 113.

### B. *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

When considering a Rule 12(b)(6) motion to dismiss, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Electric Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted). Further, "[t]he district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), and *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.' " *Gant v. Wallingford Board of Ed.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). When deciding a motion to dismiss, a court may consider not only the complaint, but also "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *See Cortec Indus. Inc.,* 949 F.2d at 47.

## III. DISCUSSION

### A. *The IDEA's exhaustion requirement*

There is no dispute that before any party may bring an action in state or federal

---

4. In their letter requesting a due process hearing, the parents stated they "postponed requesting a hearing under the IDEA because they felt that the Board's promise to use Ms. Luddy [an independent consultant] would result in the IEP being implemented."

5. In count one of the Complaint, the plaintiffs complained about the propriety of Hearing Officer Slez's ruling and sought a declaratory

ruling that Hearing Officer Slez improperly dismissed plaintiffs' claim for lack of jurisdiction. Subsequent to the filing of the Complaint, the parties entered into a Stipulated Agreement that purported to resolve "all claims for preliminary injunctive and declaratory relief raised by this lawsuit." (doc. # 16). Thus, the merits of Hearing Officer Slez's opinion are not properly before the court.

court for a violation of the IDEA, the party must first seek recourse under the IDEA's administrative procedures. *Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768 (2d Cir.2002), *citing* 20 U.S.C. § 1415(*l*).[6] In *Polera v. Bd. of Educ. of the Newburgh Enlarged City School Dist.*, 288 F.3d 478 (2d Cir.2002), the Second Circuit stated: "[T]he IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.... [It] 'prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes.'" *Id.* at 487; *citing Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992).

■ The exhaustion requirement, however, is not inflexible. *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987). "Exhaustion will be excused where it would be futile, 'the agency has adopted a policy or practice of general applicability that is contrary to law, or it is improbable that adequate relief is available in the administrative forum,' or where ... the parents have not been notified that such remedies were available to them." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir.2002) (internal citations omitted).

### 1. *Least restrictive environment*

■ In count four, the plaintiffs allege that the State and Board Defendants violated the IDEA by failing to comply with 20 U.S.C. § 1412(a)(5)(A),[7] (commonly known as the IDEA's "least restrictive environment" provision), which mandates that B.H. be afforded the maximum opportunity to interact with non-disabled students during the time he receives programming under the IDEA.

The least restrictive environment claim is being raised for the first time in the present action. The plaintiffs did not request a due process hearing to resolve this claim nor did they present this claim at the January 29, 2002 due process hearing. The due process hearing revolved around plaintiffs' concern that the Board Defendants failed to implement the October 17, 2001 IEP. Moreover, the State Defendants were not even a party to the due process hearing. *See Whitehead v. School Bd. for Hillsborough County*, 932 F.Supp. 1393, 1396 (M.D.Fla.1996) (dismissing the State Department of Education from the case because the plaintiff failed to include that defendant in the prior due process hearing). Accordingly, absent any valid reason to excuse the IDEA's explicit exhaustion

6.  20 U.S.C. § 1415(*l*) states: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter."

7.  20 U.S.C. § 1412(a)(5)(A) provides: "to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."

requirement, the plaintiffs' failure to attempt to resolve their concern that the Board and State Defendants have failed to comply with the IDEA's least restrictive environment mandate through a due process hearing deprives the court of subject matter jurisdiction. *Murphy v. Arlington Cent. School Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir.2002) (a plaintiff's failure to exhaust administrative remedies, when required, deprives the court of jurisdiction), *citing Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir.1995); *see also Taylor*, 313 F.3d at 789. Thus, the Board and State Defendants' motions to dismiss count four are granted.

### 2. *20 U.S.C. § 1413(h)*

■ In count three, the plaintiffs allege that the State Defendants violated the IDEA by failing to fulfill their statutory obligations under 20 U.S.C. § 1413(h) [8] to monitor and ensure that the Board Defendants were providing B.H. a FAPE. Specifically, the plaintiffs claim that the State Defendants were required to step in and directly provide B.H. a FAPE because the Board Defendants had failed to implement the October 17, 2001 IEP.

The court recognizes that, when a school district fails to provide a FAPE to a disabled child, the IDEA requires the State to step in and implement the FAPE directly. 20 U.S.C. § 1413(h); *Cordero*, 795 F.Supp. at 1360; *Kruelle v. New Castle County School Dist.*, 642 F.2d 687, 696–97 (3d Cir.1981). The court, however, refuses to read 20 U.S.C. § 1413(h) in isolation from the exhaustion requirement set forth in 20 U.S.C. § 1415.

As with the claims in count four, the plaintiffs never requested a due process hearing to resolve this claim, presented this claim at the due process hearing, or even included the State Defendants at the due process hearing. Interpreting the plaintiffs' Complaint in the most favorable light, as the court is required to do, the plaintiffs claim that the exhaustion requirement in 20 U.S.C. § 1415 should be excused because the plaintiffs complied with 34 C.F.R. §§ 300.660–300.662 in notifying the State Defendants, via their December 17, 2001 letter, that B.H. was not receiving a FAPE.

The court has two principal concerns with plaintiffs' argument. First, although the plaintiffs have provided the court with a number of cases indicating that an SEA can be held liable under 20 U.S.C. § 1413(h), the cases do not make clear that a party is permitted to be excused from seeking a due process hearing under 20 U.S.C. § 1415(h) prior to bringing an action in federal court under 20 U.S.C. § 1413(h). Moreover, Second Circuit caselaw explaining the IDEA's exhaustion requirement, as noted above, does not support allowing a party to bring a cause of action under 20 U.S.C. § 1413(h) without first attempting to resolve the complaint at a due process hearing under 20 U.S.C. § 1415. *See Polera*, 288 F.3d at 488 ("Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and

**8.** 20 U.S.C. § 1413(h) provides, in relevant part, that: "[A] State educational agency shall use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities residing in the area served by that local agency, or for whom that State agency is responsible, if the State educational agency determines that the local education agency ... is unable to establish and maintain programs of free appropriate public education ...." *See also* 34 C.F.R. §§ 300.660–300.662 (providing a complaint procedure in which parents of a disabled child may request the SEA to intervene).

promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children"), *quoting Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1303 (9th Cir.1992); *see also Whitehead,* 932 F.Supp. at 1396 (dismissing the State Department of Education from the case because the plaintiff failed to include that defendant in the prior due process hearing).

■ Alternatively, even if a party is permitted to bring a direct cause of action under 20 U.S.C. § 1413(h) without first attempting to resolve the complaint at a due process hearing and assuming no exception to the exhaustion requirement applies, the court is not prepared to conclude that an SEA can be held liable for failure to supervise an *individual* child's IEP unless the SEA is given clear notice, via the complaint procedure outlined in 34 C.F.R. §§ 300.660–300.662, that a local school district is denying the child a FAPE. An SEA must be afforded some procedural due process protection prior to being held liable under the IDEA; requiring a party, at a minimum, to comply with 34 C.F.R. §§ 300.660–300.662 accomplishes that goal.

In this case, the plaintiffs argue that they did comply with 34 C.F.R. §§ 300.660–300.662 by informing the State Defendants, via their December 17, 2001 letter, that the Board Defendants were not providing B.H. a FAPE. The plaintiffs, however, requested the State Defendants to intervene regarding B.H.'s October 17, 2001 IEP at a time when a due process hearing concerning the same IEP was pending. Thus, 34 C.F.R. § 300.661(c)(1) states, in relevant part, that "[i]f a written complaint is received that is also the subject of a due process hearing under § 300.507[9] or §§ 300.520–300.528, or contains multiple issues, of which one or more are part of that hearing, the State must set aside any part of the complaint that is being addressed in the due process hearing, until the conclusion of the hearing." *See also Vultaggio v. Board of Educ., Smithtown Central School Dist.,* 216 F.Supp.2d 96, 102 (E.D.N.Y.2002). Accordingly, the State Defendants were not authorized to address the October 17, 2001 IEP prior to the due process hearing.

The question then becomes: did the State Defendants have a duty to supervise and monitor B.H.'s situation, in light of the December 17, 2001 letter, after the due process hearing was conducted. The court concludes that it is unreasonable to require the State Defendants to monitor the level of services provided to an individual disabled child by a local school board when they have not been *properly* notified that the level of services provided is inadequate. In addition, in this case, the State Defendants could reasonably rely on the parents requesting them to intervene if the Board Defendants continually failed to provide B.H. with a FAPE after the due process hearing was finished because: (1) the parents were aware of the complaint procedure in order to get the SEA to intervene, as evidenced by their December 17, 2001 letter; and (2) the parents were aware of the appropriate time to request the State Defendants to intervene, as evidenced by the State Defendants' response to the December 17, 2001 letter. Accordingly, it was reasonable for the State Defendants to choose not to supervise or monitor B.H.'s progress after the due process hearing because, if the parents remained dissatisfied with the Board Defendants' failure to provide B.H. a FAPE, the

---

9. 34 C.F.R. § 300.507 states, in relevant part, that a "parent or a public agency may initiate a hearing on any of the matters described in § 300.503(a)(1) and (2) (relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child)."

parents knew how, and when, to request the State Defendants to intervene. Accordingly, the State Defendants' motion to dismiss count three is granted.

### B. Compensatory education under the IDEA

In count two of the Complaint, the plaintiffs allege that the Board Defendants' failure to implement the October 17, 2001 IEP constituted a violation of the IDEA's "free appropriate education" mandate. The plaintiffs seek an award of compensatory education to compensate B.H. for the special education instruction he missed as a result of the Board Defendants' failure to implement the October 17, 2001 IEP.[10]

In their reply brief, the Board Defendants do not dispute that compensatory education damages are available under the IDEA. *See Melvin By and Through Martell v. Town of Bolton School District,* 100 F.3d 944 (2d Cir.1996) ("Although 'there is no obligation under IDEA to provide a day-for-day compensation for time missed,' courts routinely do so, in the absence of evidence that such relief would be inappropriate or overcompensatory") (quoting *Parents of Student W. v. Puyallup Sch. Dist. 3,* 31 F.3d 1489, 1497 (9th Cir.1994); *Mrs. C. v. Wheaton,* 916 F.2d 69, 75–76 (2d Cir.1990); *Lester H. By Octavia P. v. Carroll,* 1989 WL 136303, *6 (E.D.Pa.1989)) (imposing liability for compensatory educational services on the defendants merely requires them to belatedly pay expenses

that they should have paid all along) (citing *Burlington School Committee v. Department of Education,* 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)); *Garro v. State of Connecticut,* 23 F.3d 734, 737 (2d Cir.1994); *A.A. v. Board of Educ. Central Islip Union Free School Dist.,* 196 F.Supp.2d 259 (E.D.N.Y.2002). Thus, the Board Defendants' motion to dismiss plaintiffs' claim for an award of compensatory education damages in count two is denied.

### C. Monetary damages under the IDEA

■ In count two, the plaintiffs seek a monetary award to compensate B.H. for damages he suffered during the months the Board Defendants failed to implement the October 17, 2001 IEP.[11]

■ The IDEA creates a private right of action to enforce every child's right to a "free appropriate public education." 20 U.S.C. § 1400. Under the IDEA, a district court may "grant such relief as the court determines is appropriate." 20 U.S.C § 1415(i)(2)(B)(iii). In general, however, it is not appropriate to award money damages pursuant to the IDEA "absent exceptional circumstances." *Anderson v. Thompson,* 658 F.2d 1205, 1209–10 (7th Cir.1981); *Stellato v. Bd. of Educ. of the Ellenville Cent. Sch. Dist.,* 842 F.Supp. 1512, 1516 (N.D.N.Y.1994); *A.A.,* 196 F.Supp.2d at 264 (noting that the IDEA does not generally recognize an award of compensatory or punitive damages). In *Anderson,* the Seventh Circuit envisioned

---

10. In their request for a due process hearing, as well as at the due process hearing, the plaintiffs raised their concern that the Board Defendants had failed to implement the October 17, 2001 IEP. Hearing Officer Slez ruled, in part, that she did not have jurisdiction over the issue of monetary damages and dismissed the case for lack of jurisdiction. This court concludes, for purposes of the present motion, that the plaintiffs either properly presented their claim that the Board Defendants had failed to implement the October 17, 2001 IEP, since at least October 31, 2001, to the

Hearing Officer and thereby exhausted their administrative remedies; or, alternatively, the plaintiffs are excused from exhausting their administrative remedies because it is "improbable that adequate relief is available in the administrative forum." *Weixel,* 287 F.3d at 149.

11. The plaintiffs also seek a monetary award in count four, yet, because the court has already dismissed count four, it is unnecessary to reach the issue of a monetary award under that count.

two exceptional circumstances that might support monetary damages under the IDEA. One set of exceptional circumstances exists when the defendants, in bad faith, egregiously fail to comply with the procedural provisions of the IDEA. *Anderson,* 658 F.2d at 1214; *Gerasimou v. Ambach,* 636 F.Supp. 1504, 1512 (E.D.N.Y. 1986); *Stellato,* 842 F.Supp. at 1516. The other set of exceptional circumstances exists when a parent is forced to remove his or her disabled child from school because the school is not providing the appropriate services to protect the child from harm. *Anderson,* 658 F.2d at 1214; *Stellato,* 842 F.Supp. at 1516.

■ Even after interpreting the plaintiffs' Complaint in the most favorable light, the court has serious doubts that the alleged violations of the Board Defendants—failing to provide the parents with notice of their rights to a hearing, and causing the plaintiffs to delay requesting a due process hearing by making repeated promises to implement the October 17, 2001 IEP—rise to the level of bad faith and egregious failure to meet the IDEA's procedural provisions. The plaintiffs' allegation that they removed B.H. from school in order to protect him from harm, however, might qualify as an exceptional circumstance justifying a monetary award under the IDEA.[12] Regardless of the merits of either of these claims, the plaintiffs have failed to allege that they obtained and paid for services that the Board Defendants should have otherwise provided in accordance with B.H.'s IEP. Compensatory damages under the IDEA are limited to providing parents with the costs of services they unilaterally obtained and paid for, but that should have been provided to them without cost. The IDEA was not intended to be used as a means to recoup tort damages. *See Anderson,* 658 F.2d at 1213. ("Parents' costs of obtaining services that the school district was required to provide are the only appropriate money damages in these exceptional circumstances. In no event can we imagine that tort liability damages were intended."); *see also A.A.,* 196 F.Supp.2d at 264 ("Money may be awarded under the statute only to the extent necessary to reimburse parents for services they sought and paid for on a unilateral basis."); *Sellers v. School Board of Mannassas,* 141 F.3d 524, 526–28 (4th Cir.1998) (holding that "[t]ort-like damages are simply inconsistent with IDEA's statutory scheme which strongly favors provision or restoration of educational rights."). Accordingly, pursuant to Rule 12(b)(6), plaintiffs' claims for monetary damages under the IDEA are dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

**D. *Monetary Damages under 42 U.S.C. § 1983***

In count five of the Complaint, the plaintiffs allege that the Board Defendants' deliberate delay in implementing the October 17, 2001 IEP violated B.H.'s rights under the IDEA and 42 U.S.C § 1983.[13] The

---

**12.** Although the plaintiffs did not specifically claim that they sought damages for having to remove B.H. from school in order to protect him from harm, the court should not dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**13.** Count five alleges that "the defendants" violated B.H.'s rights under the IDEA and 42 U.S.C. § 1983. The allegations of failing to provide notice, failing to hire a paraprofessional, and misrepresenting plans to remedy the problems can only be reasonably interpreted as having been brought against the Board Defendants. Moreover, in their reply papers, the plaintiffs do not dispute that count five is asserted against only the Board Defendants.

plaintiffs seek monetary damages to compensate them for these violations.[14] The Board Defendants argue that the plaintiffs cannot maintain an action for monetary damages under 42 U.S.C. § 1983 based upon violations of the IDEA. Alternatively, the Board Defendants argue that, if 42 U.S.C. § 1983 does allow for a monetary recovery, the recovery is limited to recompense for constitutional violations, not for statutory violations. Thus, because the plaintiffs are relying on violations of the IDEA (i.e., statutory violations), the Board Defendants argue that the plaintiffs' claim should be dismissed.

A plaintiff may enforce the rights granted by the IDEA by way of an action seeking money damages pursuant to Section 1983. *Taylor*, 313 F.3d at 786 n. 14 (2d Cir.2002) ("Although monetary damages are not available under the IDEA itself, a plaintiff may recover monetary damages for a violation of the IDEA pursuant to § 1983.") (citing, *Polera*, 288 F.3d 478, 483 & n. 5); *M.H. v. Bristol Bd. of Educ.*, 169 F.Supp.2d 21, 29 (D.Conn.2001); *R.B. ex rel. L.B. v. Board of Educ. of City of New York*, 99 F.Supp.2d 411, 418 (S.D.N.Y.2000) (recognizing that nothing in the IDEA precludes a claim for money damages under Section 1983 and that the IDEA, in fact, expressly contemplates such claims); *Cappillino v. Hyde Park Cent. Sch. Dist.*, 40 F.Supp.2d 513, 515–16 (S.D.N.Y.1999); *Butler v. South Glens Falls Cent. Sch. Dist.*, 106 F.Supp.2d 414, 420 (N.D.N.Y.2000). In addition, the plaintiffs are correct in their contention that the application of Section 1983 is not limited to constitutional violations but may be used to enforce statutory rights. *Chan v. City of New York*, 1 F.3d 96, 103 (2d Cir.1993), *citing Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555

(1980). Thus, the Board Defendants' motion to dismiss plaintiffs' claim pursuant to 42 U.S.C § 1983, because the statute does not provide for monetary relief for IDEA violations, is denied.

## IV. CONCLUSION

For the reasons stated above, the court makes the following rulings:

1. Count one is dismissed as moot in light of the parties' Stipulated Agreement.

2. The Board Defendants' motion to dismiss count two is DENIED in part and GRANTED in part. The Board Defendants' motion to dismiss plaintiffs' claim for an award of compensatory education under the IDEA in count two is DENIED. The Board Defendants' motion to dismiss plaintiffs' claim for compensatory damages under the IDEA in count two is GRANTED.

3. The State Defendants' motion to dismiss count three for lack of subject matter jurisdiction is GRANTED.

4. The Board and State Defendants' motions to dismiss count four for failure to previously raise their least restrictive environment claim at the due process hearing are GRANTED.

5. The Board Defendants' motion to dismiss count five for failure to state a claim under the IDEA is GRANTED. The Board Defendants' motion to dismiss count five for failure to state a claim under 42 U.S.C. § 1983 is DENIED.

6. The plaintiffs' motion for permanent injunctive relief against the Board Defendants in regard to their failure to hire a mutually acceptable independent consultant to coordinate B.H.'s IEP is denied as

---

**14.** Because this court has already concluded that, given the facts alleged, monetary damages are not available under the IDEA, it is unnecessary to address plaintiffs' claim for monetary damage under the IDEA in count five.

moot in light of the parties Stipulated Agreement.

7. Because all claims against the State Defendants have been dismissed, the State Defendants are dismissed as parties in this case.

It is so ordered.